MULLANY (UNITED STATES v.). See Case No. 15,832.

## Case No. 9,911.
### In re MULLEE.
[7 Blatchf. 23;[1] 1 Am. Law. T. Rep. U. S. Cts. 123; 8 Int. Rev. Rec. 89; 1 Chi. Leg. News, 129; 3 Am. Law Rev. 386.]

Circuit Court, S. D. New York. Oct. 20, 1869.

CONTEMPT—POWER TO DISCHARGE FROM PRISON—PARDONING POWER—APPLICATION TO PRESIDENT.

1. Where a fine was imposed upon a person by this court, as a punishment for a contempt of this court, committed by violating an injunction issued by this court, and it was ordered that he should stand committed until the fine should be paid, and he applied to his court to be discharged from imprisonment, on the ground that he was unable to pay the fine: Held, that

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

this court would not exercise the power invoked, at least until the president should disclaim the power to relieve the applicant by a pardon.

[Cited in Fischer v. Hayes, 6 Fed. 73, 74. Disapproved in Hendryx v. Fitzpatrick, 19 Fed. 811.]

2. A contempt of this court is an offence against the United States, an adjudication by the court that the contempt has been committed is a conviction, and a commitment thereon is execution.

[Cited in Ex parte Gould, 99 Cal. 362, 33 Pac. 1113.]

3. This court has no power to discharge or remit the sentence, but it falls within the pardoning power vested in the president by the constitution.

4. The power of granting a pardon in such a case has been claimed by the executive department as a part of its constitutional prerogative.

5. Disobedience to lawful process of a court of the United States is, equally with misbehavior in its presence, as a contempt of court, within such pardoning power.

[Cited in Kirk v. Milwaukee Dust Collector Manuf'g Co., 26 Fed. 506.]

6. Where a fine is imposed by this court, as a punishment for a contempt, the case is none the less within the pardoning power of the president, because the amount of the fine is directed by this court, in the order imposing the fine, to be paid to the plaintiff in a suit in which an injunction was issued, a violation of which constituted the contempt, towards the reimbursement of his expenses in the attachment proceedings in respect of such contempt.

[Cited in Searls v. Worden, 13 Fed. 717; Wells v. Oregon Ry. & Nav. Co., 19 Fed. 23; Hendryx v. Fitzpatrick, Id. 811; Kirk v. Milwaukee Dust Collector Manuf'g Co., 26 Fed. 508.]

7. If the right to such fine be regarded as a vested private right in such plaintiff, existing in the shape of a judgment, this court has no right to discharge it.

[This was a suit by Henry B. Goodyear and others against William Mullee and John Miller for infringement of patent for improvement in manufacture of hard rubber. There was a decree and injunction for the plaintiffs. Case unreported. Attachments were subsequently issued against the defendants for violating the injunction. Case No. 5,577. Subsequently, the defendant Mullee was released upon his own recognizance. Case No. 5,578. At a still later date he was again arrested on attachment and fined $2,500. Case unreported. The case is now heard upon his application to be released from confinement.]

This was a renewal of an application, heretofore made to this court, to relieve the applicant from imprisonment.

John L. Overfield, for applicant.

William J. A. Fuller and Mr. Abbett, opposed.

BLATCHFORD, District Judge. On a motion for an attachment against the applicant as a defendant in a suit in equity in this court, he was adjudged to have been guilty of a contempt of this court, by violating an injunction issued by this court, and, on the 27th of June, 1868, a fine of $2,500 was imposed on him, as a punishment for such contempt, and it was ordered that he should stand committed until the fine should be paid. After having been imprisoned for some time under such sentence, he presented a petition to this court, praying for his discharge, on the ground that he was unable to pay the fine. The decision of the court thereon was that it had no jurisdiction or power to grant the prayer of the petition, and that relief must be sought by an application to the president of the United States. I then said: "By the constitution (article 2, § 2, subd. 1) the president is invested with power 'to grant reprieves and pardons for offences against the United States, except in cases of impeachment.' No such power is conferred upon any other officer or upon any court. A contempt of court is an offence against the United States. In the present case, there is a judgment judicially declaring the contempt and offence. In Ex parte Kearney, 7 Wheat. [20 U. S.] 38, 43, the supreme court says: 'When a court commits a party for a contempt, their adjudication is a conviction, and their commitment in consequence is execution.' After a conviction and a commitment for a contempt, the court has no more power to discharge or remit the sentence than it has in the case of a conviction and commitment for any other crime or offence against the United States. And such has been the practical construction of the provision of the constitution in regard to pardons. In the case of one Dixon, a fine was imposed upon him by the circuit court of the United States for the district of Mississippi, for a contempt of court. He applied to the president for a pardon. The attorney general, Mr. Gilpin, (3 Op. Attys. Gen. 622,) decided that the pardoning power extended to such a case, and that the contempt was an offence within the language of the provision of the constitution. I fully concur in this view; and it necessarily follows, that, if the power of relieving from the sentence imposed on Mullee falls within the pardoning power of the president, it is exclusive in the president, and cannot be exercised by this court."

After this decision was made, the applicant applied to the president for a pardon, and his application was entertained and denied. The denial was not put on any want of power in the president to grant the pardon asked for, but was based on the facts shown in the case. The application to this court to discharge the prisoner is now renewed. No new views are presented as to the power of the court to grant the relief asked, and I must decline to exercise the power invoked, at least until the executive department of the government disclaims its power to relieve the party by a pardon. From what took place in the Case of Dixon, and what has transpired in this case, I must hold that the power of granting a pardon in a case like the present is claimed by the executive department as a part of its constitutional prerogative. From the report of the Case of Dixon, it appears

that the pardon was recommended by Mr. Justice McKinley, the associate justice of the supreme court of the United States whose circuit embraced at the time the district of Mississippi, and Judge Gholson. who was at the time the district judge of the United States for that district. As the report states that the contempt was committed by an affray between Dixon and another person in the presence of the judges of the circuit court of the United States, at Jackson, in the state of Mississippi, it must be inferred that Mr. Justice McKinley and Judge Gholson were those judges. The punishment they inflicted was a fine, and, as they recommended the case to the president as a proper one for a pardon, they must necessarily have been of the opinion that they had no power to relieve the party. Nor is there any distinction to be drawn between the Case of Dixon and the present case, growing out of the fact that, in the Case of Dixon, the offence was an affray in the presence of the court, while in the present case it was a disobedience to a lawful process of the court. By the 1st section of the act of March 2d, 1831, (4 Stat. 487,) misbehavior in the presence of a court and disobedience to lawful process of a court are placed on the same footing, in respect of being contempts of court. The inquiry made of the attorney general, in the Case of Dixon, was, whether the executive authority to pardon properly extended to that case. In his opinion, given to the secretary of state, in February, 1841, the attorney general says: "If we adopt, as the supreme court of the United States has decided we should do, the principles established by the common law respecting the operation of a pardon, there can be no doubt it may embrace such a case. A pardon has been held to extend to a contempt committed in Westminster Hall, under circumstances not materially different from those which occurred in the case submitted to the president. I am, therefore, of opinion, that, should the president consider the facts such as to justify the exercise of his constitutional 'power to grant reprieves and pardons for offences against the United States,' there is nothing in the character of this offence which withdraws it from the general authority."

In the Case of Rowan, 4 Op. Attys. Gen. 458, in 1845, Attorney General Mason concurred in the opinion of Mr. Gilpin in the Case of Dixon. In the Case of Drayton and Sears, 5 Op. Attys. Gen. 579, in 1852, Drayton and Sears had been indicted and convicted in the criminal court for the District of Columbia and county of Washington, under a statute, on seventy-four indictments, each of them founded on the transportation of a single slave. On these convictions Drayton was sentenced to be fined in the aggregate. with costs, $11,802.26, and Sears to be fined in the aggregate, with costs, $8,686.12. By the statute. one-half of the fine in each case was to be to the use of the master or owner of the slave, and the other half to the use of the county school or of the county. On the rendition of the judgments, Drayton and Sears were committed by the court to prison until payment of the fines and costs adjudged against them respectively. In pursuance of that commitment they were imprisoned in 1848, and they were still in prison when, in 1852, an application was made to the president for their pardon. The question being referred to the then attorney general, Mr. Crittenden, as to the constitutional power of the president to pardon the men and discharge them from the penalties and imprisonment therefor to which they were sentenced, he decided: (1.) That the pardoning power of the president extended over the whole case, and that by his pardon he might discharge them from prison and remit the fines for which they were imprisoned; (2.) That, if the president could not remit the fines because they had become private property, he could still pardon and release the offending parties from imprisonment, because such imprisonment was part of the proceedings against them as criminals, and at the instance of the United States, and was a thing distinct from any individual right of property in the fines; (3.) That the president might pardon the offence and imprisonment, with an exception or saving as to the fines, in which case the fines would remain as a debt to the United States, or to those to whom the United States had granted or transferred it, and would be recoverable accordingly by the appropriate legal remedies, which remedies the distributees of the fines would have if they were entitled to any absolute right or property in the fines. The statute, in the Case of Drayton and Sears, imposed only a fine, and the commitment to prison was ordered by the court to enforce the payment of the fines and costs. Mr. Crittenden examines the whole question with fullness, and adopts the view, that the imposition of the fines, into whosoever pockets they might go when collected, was a punishment inflicted, on a public prosecution, for an offence against the United States, and must be regarded as having for its primary, if not its sole, purpose, the vindication of public law and public justice.

I have referred to this Case of Drayton and Sears, because it was suggested, on the argument, that, in the present case, the pardoning power of the president could not be invoked, for the reason that, by the judgment of this court, the fine imposed on the applicant is to be paid to the plaintiffs in the suit out of which the attachment proceedings arose. The judgment of this court was, "that the said William Mullee has been guilty of a wilful and persistent disobedience to the order and injunction of this court, and that he be fined therefor the sum of twenty-five hundred dollars. the same to be paid to the complainants towards the reimbursement of their expenses in and about such attachment proceedings, and that he stand committed until

the said fine be paid." In this particular, the present case is like that of Drayton and Sears. The contempt of court was an offence against the United States, and the fine was inflicted as a punishment therefor.

If the right to the fine should be regarded as a vested private right in the plaintiffs in the suit, existing in the shape of a judgment, this court would have no right to discharge it.

In view of the action of the executive department in the cases referred to, I must again refer the applicant to the president. If the president shall disclaim all right and power, as a part of his constitutional prerogative, to grant any relief in this case, the matter may be again brought before me.