## WELLS, FARGO & CO. v. OREGON RY. & NAV. CO.

*(Circuit Court, D. Oregon.  January 25, 1884.)*

1. EXPRESS FACILITIES.
    Whether an express company doing business over a line of railway or steamboats is entitled to the services of the pursers and conductors thereon, as its messengers, depends on circumstances; but when one express company doing business over any such line of transportation is allowed such service, the same thereby becomes an express facility, as to all other express companies doing business thereon, and cannot lawfully be withheld from them.

2. INJUNCTION TO BE OBEYED.
    When a party to an injunction doubts its extent or significance, he ought not to disobey or disregard it, with a view of testing it in this particular, but he should apply to the court for a modification or construction of it.

3. PUNISHMENT FOR CONTEMPT.
    In a proceeding for contempt between the parties to a suit for disobedience to an injunction, causing a pecuniary loss or injury to the party instituting the proceeding, the court, in imposing punishment upon the wrong-doer, may do so for the benefit of the party injured.

Proceeding for Contempt in the Violation of an Injunction.

*M. W. Fechheimer,* for plaintiff.

*Rufus Mallory* and *Byron C. Bellinger,* for defendant.

DEADY, J.   On December 11, 1882, plaintiff commenced a suit in this court to compel the defendant to allow and furnish it express facilities on its lines of transportation; and on March 19th, after a hearing on the bill, an injunction was allowed requiring the defendant to furnish the plaintiff such facilities on and over its lines of railway and steam navigation as it then was and had been doing before the commencement of the suit and upon the same terms.   On November 20, 1883, the plaintiff filed a petition in the cause, verified by the oath of its superintendent, Mr. Dudley Evans, asking that the manager of the defendant, Mr. C. H. Prescott, and certain of its pursers and conductors, be ordered to show cause why they should not be punished as for contempt, for not obeying said injunction as therein alleged.   The petition and affidavits in support of it show that at and before the allowance of said injunction and since, the defendant was and is the owner and operator of two certain steamboats, then and now plying on the Columbia river, between Portland and Astoria and way ports, and also a certain steam-ship plying between Portland and San Francisco, as well as the lessee and operator of a certain narrow gauge railway running from White Station to

Sheridan and Airlie, in Oregon; that until October 1, 1883, the defendant allowed the plaintiff to have the services of pursers and conductors on said vessels and road, to take charge of its treasure-box and letter-bag, and deliver and receive all matter transported therein, as its agents and messengers along the routes traveled by them, for which it has and is willing to pay a reasonable compensation and indemnify the defendant against any loss by reason of the carriage of such express matter; and that since said date the defendant had refused to allow or furnish the plaintiff these facilities, contrary to the injunction herein, and notwithstanding it is furnishing the same to the Northern Pacific Express Company, a corporation, the stock of which is largely owned by the persons who control the defendant.

The order was made as asked for, and on December 4th the manager of the defendant answered for it and himself, admitting the facts alleged in the petition, and stating that he did not understand that the defendant was required by the injunction to allow its pursers and conductors to act as the agents and messengers of the plaintiff; that acting upon this impression and the advice of counsel that such services were not included in the injunction, and were not express facilities anyhow, he had directed the pursers and conductors of the defendant not to act as the agents and messengers of the plaintiff; and that the respondent did not intend to violate or disobey the injunction of the court. Only two of the pursers and conductors—C. A. Gould, of the narrow gauge, and John B. Maynard, of the steamship Columbia—appear to have been served with the order to show cause, and they answered jointly, saying that the injunction was not served on them, and they were not aware of its terms, and did not suppose that it required them to act as agents of the plaintiff, but that in refusing to do so they did not intend to disobey the injunction, and were simply acting in obedience to the orders of their superior.

The scope and meaning of the phrase "express facilities" does not admit of absolute definition. Its force and effect must often depend on circumstances, of which local usage, the conduct, and convenience of the parties may be important considerations. For instance, take the service which the plaintiff claims at the hands of the purser of the steam-ship. It consists simply of receiving the plaintiff's treasure-box and letter-bag in his office, on the vessel, and putting it in the safe and keeping it there until the arrival of the vessel at Portland or San Francisco, as the case may be, and there delivering the same, on board, to the agent of the plaintiff. Thereby the defendant incurs neither expense nor risk, and the plaintiff saves the hire and transportation of a special agent between these ports. The inconvenience to the defendant is nothing, while the inconvenience to the plaintiff is very considerable. It is an arrangement which commends itself at once, as reasonable and well calculated to promote the conduct of the business in which the parties are engaged,

namely, the transportation and delivery of parcels with certainty and celerity on the one hand, and the furnishing the means and conveniences for so doing on the other.

And it is not apparent on what ground the defendant can reasonably refuse this facility, unless it desires to impede rather than promote the plaintiff's business, which is contrary to its duty and obligations as a common-carrier. While the plaintiff was the only company doing business on the defendant's routes, it was furnished this facility as a matter of course. It was mutually profitable. Under the circumstances, the defendant could furnish it much cheaper than the plaintiff could supply it. That it was the proper and convenient thing to do, seems then not to have been questioned. But when a rival corporation enters this field to compete with the plaintiff in the express business, the defendant withdraws this facility from the latter, and extends it to the former. The only reasonable explanation of this conduct is that the defendant intends to favor the one company, which is in fact itself or its near ally in interest, and hinder the other in the conduct of its business. The same may be said of the services of the conductors on the narrow guage road. Presumably the business thereon is so light that it is a burdensome expense to send a special messenger over the road with the express matter, while the duties of the conductor are so inconsiderable that he can attend to it as well as not.

The injunction requires the defendant to furnish the plaintiff with the express facilities that it was allowed at and before the filing of the bill; and this facility, as we have seen, was one of them. If, however, the defendant or its manager thought that this was such a facility or convenience as it ought not, under the circumstances, to be required to furnish, and would not if the court's attention was specially called to the matter, he should have applied for a modification of the injunction in this respect, and not have undertaken to disregard it, with a view of testing the matter or otherwise. The merit or propriety of the injunction is not open to consideration in this proceeding. It is the duty of all the parties to obey the injunction until it is set aside or modified. *Craig* v. *Fisher*, 2 Sawy. 345. As it is, the respondents are clearly guilty of a violation of the injunction, and are liable to be punished as for a contempt, regardless of the question whether this service is one which the defendant ought to furnish the plaintiff as an "express facility" or not. But even if the defendant had never furnished the plaintiff with this facility, and even if it is not, under the circumstances or otherwise, an absolute express facility, yet the defendant has by its conduct, so far made it one that it is bound, both by the terms of the injunction and its duty and obligation as a common carrier, to furnish it to the plaintiff. Having voluntarily furnished the Northern Pacific with this convenience in the transaction of its business, it cannot refuse it to Wells, Fargo & Co. In giving this convenience to the one com-

pany doing an express business over its lines of transportation, the defendant, as to all other companies doing such business thereon, has thereby made it an absolute express facility, to which all are equally entitled. As was said in *Wells* v. *O. & C. Ry. Co.* 18 FED. REP. 672.

"The defendant is bound to furnish the express company with reasonable facilities for the conduct of its business, and if there is more than one company doing business over its road it must furnish equal facilities to all. To deal fairly and justly in this respect, and according to its obligation, the defendant must serve the express companies equally, and neither directly nor indirectly favor the one nor hinder the other. Whatever terms or favors it extends to one, it must extend to the other, because that other becomes thereby entitled to them. No discrimination can be allowed; but equality of service, conditions and compensation is the fundamental rule governing the business or transaction."

This case is also referred to generally as authority in the premises. The two cases are in principle, if not in instance, exactly alike. Disobedience to an injunction is a contempt of court which may be punished by fine or imprisonment. *Atlantic G. P. Co.* v. *Dittmar P. M. Co.* 9 FED. REP. 316; section 725, Rev. St. Either the corporation committing the contempt may be punished, or the agent through whom it acts. *U. S.* v. *Memphis & L. R. R. Co.* 6 FED. REP. 237.

The purser and conductor are discharged. It does not appear that they were ever served with the injunction or made aware of its terms in this respect. The defendant corporation and its manager are adjudged to be guilty of a contempt, as alleged in the petition herein, by the violation of the provisional injunction heretofore issued in this case in pursuance of the order of this court made and entered on March 19, 1883. But as this is a proceeding between the parties to the suit, having a remedial purpose rather than a punitive one, the matter will now be referred to the master to ascertain what loss, expense, or injury the plaintiff has sustained by reason of the misconduct of the defendant, with a view of enabling the court to impose, by way of punishment, a corresponding penalty on the defendant for the benefit of the plaintiff; and as to any further proceeding the matter is continued until the coming in of the master's report. *Craig* v. *Fisher, supra; Fischer* v. *Hayes,* 6 FED. REP. 63; *Macaulay* v. *White S. M. Co.* 9 FED. REP. 698; *In re Mullee,* 7 Blatchf. 23.