HENDRYX and others *v.* FITZPATRICK.

*(Circuit Court, D. Massachusetts.   April 2, 1884.)*

CONTEMPT—POWER OF COURT TO REVOKE ITS ORDERS.

    An order committing a defendant for contempt, in refusing to pay a sum of money, is civil, and not criminal, in its nature, and the court which committed him is at liberty to release him again in case he shows himself unable to comply with the requirements of the court

In the Matter of Contempt of Court.

*T. W. Porter* and *J. McC. Perkins,* for complainants.

*A. H. Briggs,* for defendant.

Before LOWELL and NELSON, JJ.

LOWELL, J.   In this case the defendant was enjoined from infringing a patent, *pendente lite,* because, though the court had serious doubts of its validity, the defendant had himself sold the patent to the plaintiffs for a considerable sum of money, and it was thought no more than justice that he should refrain from violating his own implied warranty until the final hearing.   Afterwards proceedings for contempt for a violation of the injunction were prosecuted by the plaintiffs, and after evidence taken and a hearing, the defendant was ordered to pay the fees of the master by a certain day, the costs of the proceedings, and certain profits assessed by the master, by certain other days, and in default of payment to be committed.   These last two sums, when paid in, were to be paid out to the plaintiffs. The defendant failed to make the last two payments, and was committed to prison.   After he had been in confinement for about two weeks the district judge, with my approval, though I was unable to sit in the case, permitted the defendant to go before the master and prove, if he could, in proceedings like those under the poor-debtor law of Massachusetts, that he had no property which he could apply to the payment of his debts.   The plaintiffs were duly notified of the hearing before the master and did not attend, and the master admitted the defendant to take the poor-debtor's oath; and thereupon the court discharged him upon his own recognizance.

The plaintiffs now move that the defendant may be recommitted under the original order. They argue that every order since made in the cause is *ultra vires* and void, because the first order was a final decree in a criminal case, and could not be varied after the term; and because the defendant could only be discharged from arrest by the pardon of the president. It would be a sufficient answer to this argument, that, if the order was a criminal one, having the consequences contended for, the fine should have been made payable to the United States, and the plaintiffs would have no concern with it; but we will explain why all the orders are, in our opinion, proper. The original order was an interlocutory civil order, for the benefit of the plaintiffs; and the commitment was for failure to pay the money, not for the original contempt. While, therefore, the imprisonment may not have been strictly and technically within our poor-debtor law, (Rev. St. § 991,) which, however, we think it was, yet it should, at all events, be governed by similar rules. It was made in this way, because the master found that the contempt was not willful, and I thought that no punishment was necessary. The process of contempt has two distinct functions,—one, criminal, to punish disobedience, the other, civil and remedial, to enforce a decree of the court and indemnify private persons. In patent causes it has been usual to combine the two, and to order punishment if it is thought proper; or indemnity to the plaintiff, if that is all that justice requires; or both. *Re Mullee,* 7 Blatchf. 23; *Doubleday* v. *Sherman,* 8 Blatchf. 45; *Schillinger* v. *Gunther,* 14 Blatchf. 152; *Phillips* v. *Detroit,* 3 Ban. & A. 150; *Dunks* v. *Gray,* 3 FED. REP. 862; *Searls* v. *Worden,* 13 FED. REP. 716; *Matthews* v. *Spangenberg,* 15 FED. REP. 813.

We are aware that it was at one time the opinion of Judge BLATCHFORD that a sum of money ordered to be paid to a plaintiff, in a cause of this kind, was a criminal fine, which could only be remitted by a pardon; but we are of opinion that such a fine for the benefit of a private person cannot be remitted by the president, and is a debt of a civil nature; and that Judge BLATCHFORD has so treated it in the latest case which has come before him. His first opinion is stated in *Mullee's Case,* 7 Blatchf. 23, and *Fischer* v. *Hayes,* 6 FED. REP. 63; but when the latter case came before the supreme court, they expressed a significant doubt whether the order to pay money for the use of the plaintiff was not an interlocutory decree in a civil cause, (*Hayes* v. *Fischer,* 102 U. S. 121;) and when the case came back, Judge BLATCHFORD admitted the defendant to bail, (*Fischer* v. *Hayes,* 7 FED. REP. 96,) which he could not have done if the judgment were criminal in its nature. The doubt of the supreme court might well have been even more strongly expressed. An order upon a defaulting trustee, assignee in bankruptcy, or other person subject to account, to pay money into court, is civil, and may be waived by the party adversely interested, and is a debt to which a bankrupt law, discharging the debt, and an insolvent law, discharging the person, are applicable.

See *Baker's Case*, 2 Strange, 1152; *Ex parte Parker*, 3 Ves. 554; and the decisions hereinafter cited.

In *McWilliams' Case*, 1 Schoales & L. 169, a defendant in contempt for not paying a legacy into the court of chancery in obedience to its order was attached while attending the commissioner to be examined as a bankrupt. His arrest was lawful, if the contempt was a criminal offense. That very learned chancery lawyer, Lord REDESDALE, said that it was merely a mode of enforcing a debt; that if it were not so he had no right to make the original order; that the substance and not the form of the proceeding must govern, and its substance was not criminal. The petitioner was discharged. The same point was decided in the same way in *Ex parte Jeyes*, 3 Dea. & Ch. 764; and *Ex parte Bury*, 3 Mont. D. & D. 309.

The remark of the lord chancellor in *McWilliams' Case*, that he had no right to make an order of this sort for the benefit of a private person, excepting as a civil remedy, is highly pertinent to this case.

Where a person had been committed to prison for nine months for contempt in not paying money into a county court, sitting in bankruptcy, JAMES, L. J., said: "The order, on the face of it, is wrong, for it is an absolute order of commitment for contempt of court for non-payment of money. This is a penal sentence. The court of chancery never made an order in this form." And again: "The order of commitment was such as had never been made in the court of chancery, and was justly characterized by the chief judge as novel and surprising." *Ex parte Hooson*, L. R. 8 Ch. 231. This distinction is preserved in our Revised Statutes. The courts have power to punish for contempt, (section 725;) but all forms and modes of proceeding which are usual in equity may be followed in cases in equity. Section 913. By virtue of section 725 the district court may punish contempts. Like power is given the district judge when sitting in chambers in bankruptcy, by section 4973; and the cognate but distinct power of enforcing his decrees "by process of contempt, and other 'remedial' process," is recognized by section 4975. See *In re Chiles*, 22 Wall. 157. Some of the older cases hold that in contempt in civil cases at common law, the proceedings, after the order of attachment, should be on the crown side of the court; that is, in the name of the sovereign. *The King* v. *Sheriff of Middlesex*, 3 Term R. 133; *Same* v. *Same*, 7 Term R. 439; *Folger* v. *Hoogland*, 5 Johns. 235. This is still the better practice, or, at least, a good practice, if punishment is asked for. *Cartwright's Case*, 114 Mass. 230; *Durant* v. *Sup'rs*, 1 Woolw. 377; *U. S. ex rel.* v. *A., T. & S. F. Ry. Co.* 16 FED. REP. 853. If this was ever the rule of chancery, it has long since ceased to be so, when the sole purpose of the attachment is to enforce a decree or order, such, for instance, as to sign an answer, to make a conveyance, to pay money, etc. All such orders may be waived or condoned by the private person interested in them, and are civil and remedial. *Ex parte Hooson, supra; Ex parte Eicke,* 1 Glyn.

& J. 261; *Wall* v. *Atkinson*, 2 Rose, 196; *Wyllie* v. *Green*, 1 De Gex & J. 410; *Buffum's Case*, 13 N. H. 14; *People* v. *Craft*, 7 Paige, 325; *Jackson* v. *Billiags*, 1 Caines, 252; *Anon.* 2 P. Wms. 481; *Const* v. *Ebers*, 1 Mad. 530; *Smith* v. *Blofield*, 2 Ves. & B. 100; *Brown* v. *Andrews*, 1 Barb. 227; *Ex parte Muirhead*, 2 Ch. Div. 22; *Lees* v. *Newton*, L. R. 1 C. P. 658; *Re Rawlins*, 12 Law T. (N. S.) 57.

In patent cases it has been usual to embrace in one proceeding the public and the private remedy—to punish the defendant if found worthy of punishment, and, at the same time, or as an alternative, to assess damages and costs for the benefit of the plaintiff, as is seen by the cases cited in the beginning of this opinion. A course analogous to this has been said, *obiter*, to be proper, by MILLER, J., in *Re Chiles*, 22 Wall. 157, 168. "The exercise of this power has a twofold aspect, namely,—*First*, the proper punishment of the guilty party for his disrespect of the court and its order; and, the *second*, to compel his performance of some act or duty required of him by the court which he refuses to perform," citing *Stimpson* v. *Putnam*, 41 Vt. 238, where a defendant was, at the same time, fined $50 for the benefit of the state, and $1,170 and interest and costs for that of the party injured by breach of an injunction. The chancellor in that case said: "This proceeding for contempt is instituted not only to punish the guilty party, but also, and perhaps chiefly, to cause restitution to the party injured." Such, we repeat, has been the practice in patent causes. It is used in other cases, as in the familiar one of a witness neglecting to answer a summons, who may be fined for his disobedience, and also be required to testify.

If the proceedings should be criminal in form it would make no difference. A criminal sentence, for the benefit of a private person, is to be treated as civil to all intents and purposes. It is beyond the king's pardon, and within the equitable jurisdiction of the court at all times. 4 Bl. Comm. 285. At this place the author, speaking of disobedience to any rule or order of court, of the sort we are considering, says:

"Indeed, the attachment for most part of this species of contempts, and especially for non-payment of costs and non-performance of awards, is to be looked upon rather as a civil execution for the benefit of the injured party, though carried on in the shape of a criminal process for a contempt of the authority of the court. And therefore it hath been held that such contempts, and the process thereon, being properly the civil remedy of an individual for a private injury, are not released or affected by the general act of pardon."

Where a defendant had been convicted of an offense against the laws prohibiting lotteries, and had been sentenced to a term of imprisonment, which had expired, and to pay costs for the use of the prosecutor, and had not paid them, he was discharged from custody under the lord's act, which was an early insolvent law, like our poor-debtor laws, so far as the discharge of the person is concerned. *Rex*

v. *Stokes*, Cowp. 136. ASTON, J., after saying that an attachment is an execution for a civil debt, and that the public offense had been purged by the imprisonment, added: "This stage of the cause, therefore, is merely of a civil nature, and a matter solely between party and party, unconnected with the offense itself;" that it comes within the insolvent debtor's act: "If not, the consequence must be imprisonment for life; for a general pardon would not extend to him;" that is, would not release him from costs due a private person, or from imprisonment on account of them, "as was agreed in *Rex* v. *Stokes*, 23 Geo. II." So, where a penalty was inflicted by a criminal proceeding, but for the benefit of a private person, and an attachment was issued for want of a sufficient distress, BULLER, J., said that the proceeding was like a civil action, and that *Ex parte Whitchurch*, 1 Atk. 54, where attachment for not performing an award was held to be criminal, was no longer law. It was held, therefore, that the defendant could not be attached on Sunday. *The King* v. *Myers*, 1 Term. R. 265. We do not mean to be understood that the court has a general discretion to annul orders passed for the benefit of a party to the suit; but that where inability is shown to comply with the order,—as, for instance, insanity, if the decree requires an act to be done, or poverty, if the decree is for the payment of money,—it is according to the course of the court, and of all courts, to discharge the imprisonment, of which the end is proved to be unattainable. See, besides the cases already cited, *Wall* v. *Court of Wardens*, 1 Bay, 434; *Re Sweatman*, 1 Cow. 144; *Kane* v. *Haywood*, 66 N. C. 1; *Galland* v. *Galland*, 44 Cal. 478; *Pinckard* v. *Pinckard*, 23 Ga. 286.

Where an attorney of any court fails to pay over money to his client, the court may, after due proceedings, commit him for a contempt. This was formerly considered to be criminal, and is fully explained in 2 Hawk. P. C. 218 *et seq.* But it has long since been settled that it is of a civil character. *Ex parte Culliford*, 8 Barn. & C. 220; *Rex* v. *Edwards*, 9 Barn. & C. 652. The lord chief justice in the latter case said that it had "always" been held that attachments for non-payment of money were in the nature of civil process.

In *Reg.* v. *Thornton*, 4 Exch. 820, and *The Queen* v. *Hills*, 2 El. & Bl. 175, costs in a criminal case were in question, and the defendant was discharged—in one, because the prosecutor had proved for the amount in bankruptcy, and thus waived the attachment, and in the other, because the defendant had been discharged as an insolvent. In the former of these cases, it was said by PASHLEY, *arguendo*, that the courts had exercised the power to discharge a defendant in such a case, on account of poverty, as early as 29 Edw. I.

It was admitted, in argument, in the case before us, that the court would not have been justified in imposing a pecuniary fine upon the defendant if he had proved his poverty before the order was made, but that afterwards it was too late. We are of opinion that no such

distinction can be maintained, but that the defendant should be released from imprisonment in such a case, though his evidence is produced while the order is in process of enforcement against him.

Petition denied.

See *In re Cary,* 10 FED. REP. 622, and note, 629.—[ED.