CHRISTENSEN ENGINEERING CO. v. WESTINGHOUSE AIR BRAKE CO. (two cases).

(Circuit Court of Appeals, Second Circuit. February 1, 1905.)

1. PATENTS—INFRINGEMENT—INJUNCTION—SERVICES—CONTEMPT.

Where a copy of an injunction issued against the infringement of a patent was served on defendant's attorneys, and a copy was inclosed in a letter properly addressed and mailed to defendant, such service was sufficient to sustain a proceeding for contempt, defendant being bound by the injunction if actual notice thereof was acquired by it, independent of service.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Contempt, §§ 68–70; vol. 27, Cent. Dig. Injunction, §§ 437, 445–447.]

2. SAME—INFRINGEMENT—FINDINGS.

Where, in proceedings against defendant for contempt in selling certain valves alleged to infringe complainant's patent in violation of an injunction, complainant's statements were based on information derived from the parties in whose possession t... infringing valves were found, and defendant did not deny making tne sales, the trial court was justified in finding that the valves were infringements.

3. SAME—CONTEMPT PROCEEDINGS—NOTICE.

Where, in a proceeding to punish defendant for contempt in violating an injunction restraining the infringement of a patent, notice of the commencement of such proceedings was properly given to defendant's solicitors, and, under order of court, a notice of the application for attachment and a copy of the affidavits to be used thereon were sent to defendant by registered mail, and returned marked "Refused," defendant not having controverted the charge of contempt, an objection that the notice of the proceedings was not properly served was unsustainable.

4. SAME—PUNISHMENT—DISPOSITION OF FINE—REVIEW.

Where in contempt proceedings a part only of the fine assessed against defendant was awarded to the complainant, the proceeding was

reviewable by appeal, though, if the entire fine had been so awarded, the order could have been reviewed only on writ of error.

5. SAME—LIMITATION OF AWARD.

  Where, in a proceeding to punish defendant for contempt in violating an injunction restraining infringement of a patent, the court found that complainant was entitled to a portion of the fine, only so much thereof should be so awarded as evidence disclosed would be sufficient to reimburse complainant for its expenses necessarily incurred in prosecuting the contempt proceeding and loss consequent on violation of injunction.

In Error to the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 121 Fed. 562, 130 Fed. 735.
See 128 Fed. 749.

Wm. A. Jenner, for plaintiff in error.
Frederic H. Betts, for defendant in error.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. These cases are before us on writs of error to review two proceedings in contempt, in each of which the order of the court below adjudged the defendant, in an equity suit brought to restrain the infringement of a patent, guilty of contempt for violation of an interlocutory injunction restraining such infringement. The two cases may be considered together conveniently.

The order in the first proceeding fined the defendant $1,000, and directed one-half of the fine to be paid to the clerk of the court for the use of the United States, and one-half to the complainant in the suit. The order in the second proceeding fined the defendant $4,000, and directed one-half of the fine to be paid to the clerk of the court for the use of the United States, and one-half to be paid to the complainant.

The injunction was granted October 18, 1901, and restrained the defendant from making or selling certain automatic air-brake apparatus particularly described therein. The defendant's principal place of business was in Milwaukee, Wis., but it had an office and a managing agent at New York City. A copy of the injunction was duly served upon its solicitors in the cause by the complainant's solicitors, October 21, 1901. October 28, 1901, the solicitors for the complainant sent a copy of the injunction to the defendant, inclosed in a registered letter properly addressed to the defendant at Milwaukee, and mailed at the city of New York, with postage prepaid. In July, 1902, the complainant, having been informed that the defendant had sold certain valves which were an infringement of the injunction to the Boston & Maine Railroad Company, called the attention of the defendant to the fact, and sent a representative to Concord, N. H., to investigate. One of the valves found there which had been sold by the defendant was submitted to experts, and pronounced to be an infringement of the patent. In December, 1902, a notice of an application for an attachment for the violation of the injunction, together with a copy of the

moving papers, was served upon the defendant's solicitors by the complainant's solicitors. These papers were transmitted by the latter to the counsel of the defendant at Milwaukee, and their contents were communicated by him to the manager of the defendant there. The defendant appeared upon the hearing of the application, and filed various objections to the proceedings. The court found that the defendant had sold four of the infringing valves on or about July 21, 1902. The affidavits introduced by the defendant in opposition to the application set forth, among other things, in substance, that the infringing devices had not been constructed according to the directions given to its workmen, that its workmen were five or six hundred in number at its Milwaukee shops, and that the four valves had "slipped through the shop" inadvertently. In deciding the motion, the court in its opinion said:

"The defendant, upon the record here presented, must be acquitted of any deliberate violation of the order of the court, its officers having given instructions not to make or sell such structures. Nevertheless, it is thought that an enjoined defendant should take such steps as will enforce obedience to its instructions on the part of its employés. This motion might have been avoided had proper attention been given to the notification served upon the defendant last summer that infringing valves had been found which had been sold by its employés since injunction."

The order imposing the fine was entered January 10, 1903.

In July, 1903, the complainant learned from information derived from the American Car & Foundry Company that the defendant had sold to that company, upon an order given July 26, 1902, equipments embracing the infringing valves for between 25 and 30 cars, which were delivered to that company on the 28th of August, 1902, and by it shipped to the Denver & Northwestern Railway Company in April, 1903. Thereafter notice of a second application for an attachment for this violation of the injunction, together with copies of the affidavits upon which the application was based, was served by the complainant's solicitors upon the defendant's solicitors. When this motion came up for hearing, the defendant's solicitors appeared, and objected that such service was unauthorized. Thereupon the court made an order directing the complainant's solicitors to serve notice of the application for an attachment, and a copy of the affidavits to be used thereon, upon the defendant by registered mail. Pursuant to this order, the notice and a copy of the affidavits were duly mailed to the complainant's solicitors by depositing the same in the post office at the city of New York, May 21, 1904, in a registered letter properly addressed to the defendant, with the postage thereon prepaid. This letter was indorsed with the names of the complainant's solicitors. On May 26th the letter was returned to the complainant's solicitors by the postmaster with the official indorsement "Refused." At the time and place of hearing mentioned in the notice, the defendant's solicitors appeared, and filed an objection as follows:

"The undersigned, solicitors of defendant in the above-entitled suit, respectfully represent to the court that they are not authorized to accept service of process or other papers in criminal contempt proceedings against the defendant, or to waive any rights which the defendant may have had

in such proceedings, and object that the complainant has not duly served its motion for attachment in the pending proceeding upon the defendant, and that the court has no jurisdiction to entertain the pending proceeding because, among other reasons, the defendant has not been brought into court."

The affidavits used upon the hearing contained a recital of the previous proceedings and copies of the moving and answering affidavits used thereon, besides additional affidavits setting forth the facts in regard to the further infringement, and to the service of the motion for an attachment, which have been referred to. In deciding the motion, the court in its opinion, among other things, said:

"This is the second violation of the same injunction, and defendant does not offer even the excuse of inadvertency which it presented before."

The assignments of error in each of the proceedings assert that the court erred in deciding that the injunction was duly served on the defendant, in deciding that the defendant had infringed the injunction, in deciding that proper notice to the defendant of the motion for attachment had been given, and assert that the court imposed an excessive fine. Various other errors were assigned, but, as they have not been argued, it is unnecessary to refer to them.

The service of a copy of an injunction upon the solicitors for the defendant in an equity suit ordinarily affords sufficient notice to the defendant, and should be deemed equivalent to actual notice to the defendant of the contents. It is the duty of the solicitor promptly to inform his client of the contents of the document, and the presumption is that he has done so. If it should appear that he has not done so, the court would doubtless acquit the defendant of any intentional misconduct in a proceeding to punish him for violating the order. In this case there was the additional presumption that a letter properly addressed and mailed reached its destination at the proper time and was duly received by the person to whom it was addressed. This is a presumption of fact resting upon the consideration that the post office is a public agent charged with the duty of transmitting letters, and that what ordinarily results from the transmission of a letter through the post office probably resulted in the given case; it is deduced from the known course of business, and the presumption that the officers of the postal system have discharged their duty. Rosenthal v. Walker, 111 U. S. 185, 4 Sup. Ct. 382, 28 L. Ed. 395; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Henderson v. Carbondale Coal & Coke Co., 140 U. S. 26, 11 Sup. Ct. 691, 35 L. Ed. 332; Schutz v. Jordan, 141 U. S. 213, 11 Sup. Ct. 906, 35 L. Ed. 705. According to the modern practice, actual service of an injunction upon the person sought to be restrained is not requisite to lay the foundation of a proceeding against him for contempt. The authorities are collected in Rapalje on Contempt, § 46, where the author, after referring to some conflict in the cases, uses this language:

"The weight of authority, however, and in our judgment the better opinion, is that a defendant against whom an injunction is issued, who has

actual notice thereof, will be bound thereby, although the same is not served upon him."

In re Lennon, 166 U. S. 548, 554, 17 Sup. Ct. 658, 41 L. Ed. 1110, the court said:

"To render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice."

In deciding that the defendant had violated the injunction, the court necessarily passed upon the questions whether the defendant had sold the valves, and whether the valves were an infringement of the complainant's patent. Upon writ of error the court cannot review questions of fact. Its review is confined to questions of law only. This is the rule when contempt proceedings are under review. In re Debs, 154 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092; Besette v. Conkey Co., 194 U. S. 334, 24 Sup. Ct. 665, 48 L. Ed. 997.

The affidavits did not contain any positive statements of the sale of the valves by the defendant, but the statements were founded upon information derived from the parties in whose possession the valves were found. The defendant did not deny making the sales. There was certainly sufficient evidence to justify the court in finding that the valves were infringing valves, and this court cannot enter upon an inquiry as to its weight or conclusiveness.

The question whether notice of the motion for an attachment had been properly given to the defendant was not raised by the objections taken in the first proceeding, and need not be considered. In Matter of Nichols, 54 N. Y. 62. In the second proceeding, however, the objection was raised. It may be conceded that generally the rule obtains that, before a party will be punished for contempt, it must appear that he has been personally served with notice of the application. The precedents, however, are not unanimous. In Encyclopædia of Pleading & Practice, vol. 4, p. 783, the text states the rule as follows:

"While, from the character of contempt proceedings, the order to show cause is the most natural and ordinary process of reaching the offender, and most in vogue under American practice, nevertheless the court will issue an attachment without an order nisi where one is present in court, and, with full knowledge of an order passed, is guilty of disobedience; or against an officer of the court failing to comply with its mandates, such officer being presumed to be always before the court."

In Zimmerman v. Zimmerman, 14 N. Y. Supp. 444, the Supreme Court of New York held that service on the attorney of the party was sufficient. In Petrie v. The People, 40 Ill. 334, 344, it was objected that the defendant had not been served with any notice of the application prior to the issuance of the attachment, and it was held that as the defendant was fully aware of the order which he was charged with having violated, and knew he was in default under it, and subject to attachment for contempt for noncompliance, service was unnecessary. In Eureka Lake Co. v. Yuba County, 116 U. S. 410, 6 Sup. Ct. 429, 29 L. Ed. 671, it was decided

that when a court, having acquired jurisdiction of a cause and the parties to it, issues an order upon one of the parties to show cause why he should not be punished for contempt in disobeying a temporary restraining order of injunction made in the cause, and he conceals himself to evade service of a process, the court may, on proper return of the facts, direct service of the order to show cause to be made on his attorney of record, and, after due service thereof, may proceed to hear the order to show cause, and to adjudicate the same. The court in its opinion said:

"To deny the power of calling on a concealed corporation through its chosen attorney of record in a suit to appear and answer to a charge of contempt for disobeying the orders of the court duly entered in that suit, would be to deny it the power of vindicating its authority and enforcing obedience to its lawful commands against a party personally subject to its jurisdiction."

These authorities show that it is not indispensable that the party proceeded against be actually served with notice of the application for the attachment. In the present case the presumption that its solicitors gave it prompt notice of the application of which they had been notified has as much force as the presumption that they gave the defendant notice of the injunction; and the presumption also obtains, from the proper mailing of notice of the application to the defendant, that it had an opportunity to acquaint itself of the contents. If the defendant chose to refuse to receive the registered letter which had been sent to it, it was in no better position to raise the objection which has been urged than a party would be who had concealed himself to avoid service. As a matter of fact, it cannot be doubted that the defendant had a sufficient opportunity to appear and controvert the charge of contempt. Instead of doing this, it contented itself with opposing the application upon purely technical grounds. We think the objection was not well taken, and the assignment of error is not valid.

The contention of the defendant that the fines were excessive involves a review of the judicial discretion exercised by the court below, and the rule is that decisions of that character will not be reversed unless it is manifest that they have proceeded upon wrong principles or that the discretion has been abused. Proceedings of contempt are of two classes: Those prosecuted to preserve the power and vindicate the dignity of the courts by punishing the contemnor, and those prosecuted to compel observance and redress the violation of orders or decrees made in behalf of a party to an action pending before the court. The former are punitive and essentially criminal in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly interested in their conduct and prosecution are the individuals whose private rights and remedies they are necessary to redress. The intentional violation of an injunction by a party to the cause is an act in defiance of the authority of the court and in derogation of the rights of the adverse party, and a prosecution for contempt in such case may partake of both a punitive and a remedial char-

acter. The proceeding is not one to enforce the criminal laws, but is one of a quasi criminal nature. If the adjudication imposes a fine on the contemnor in favor of the government, it is a criminal judgment; if it imposes a fine in favor of the adverse party, in reparation of the loss which has been occasioned him by the act of the contemnor, it is a civil judgment. If the fines in the present case had been imposed solely in favor of the government, the question whether they were reasonable or excessive in amount would be so largely one of the discretion of the court below that we should not feel justified in disturbing them. Different judges and different tribunals may well reach different views in deciding, upon the same state of facts, whether a given penalty is an adequate, or a moderate, or an excessive punishment for an offense, and, because the correct measure of the punishment cannot be ascertained by any fixed criterion, a reviewing tribunal should interfere only in an extreme case. Rogers Manufacturing Co. v. Rogers, 38 Conn. 121; The People v. Delvecchio, 18 N. Y. 352; Myers v. The State, 46 Ohio, 473, 22 N. E. 43, 15 Am. St. Rep. 638. The defendant was a large manufacturing corporation. It had infringed a patent of sufficient importance to induce it to contest its liability in an expensive litigation, and, when defeated in the Circuit Court, to prosecute an appeal to the Circuit Court of Appeals, where it was again defeated. Its officers were presumably men of sufficient intelligence and business experience to appreciate their obligations to respect and observe the mandate of the court, and to apprehend the probable consequences of neglect or evasion or contumacy. In the first proceeding the violation of the injunction may not have been a willful in the sense that it was a deliberate act; but upon what consideration can this court say, in view of the fact that the defendant had failed to exert proper supervision over those in its employ, that the fine was excessive? In the second proceeding the court below was certainly not without justification in considering that the violation of the injunction had not been inadvertent. It was not such a trivial violation as would have been likely to be accidental. The silence of the defendant, and its attitude in meeting the charges against it by merely technical objections, were quite properly taken into consideration in fixing the amount of the fine and in disciplining it for its contumacy.

We entertain some doubt whether we are at liberty to review that part of the orders by which half of the fine imposed upon the defendant was awarded to the complainant. Although the orders do not in terms recite that this half of the fine was awarded as a compensation to the complainant for the loss and expense to which it had been put in obtaining evidence and prosecuting the contempt proceedings, we assume that this was the meaning of the orders. If the whole fine had been awarded to the complainant, the orders could not have been reviewed on writ of error, and could only be reviewed upon an appeal from the final decision in the cause. It was held by the Supreme Court (Re Christensen, 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072) that because the fine (in

the first proceeding) was imposed in part in vindication of the authority of the court, this feature of the judgment dominated the proceeding, and fixed its character as one which was reviewable by this court upon a writ of error as a final decision in a proceeding of a criminal nature. The court did not suggest that the part which was not punitive could be re-examined, and the question was not before the court. Nevertheless we derive the impression from the opinion that it was not the meaning of the court that there should be a partial review only, and that the court regarded the whole proceeding as open to review, because it was one which was to be regarded as having for its primary though not its sole purpose the vindication of the authority of the court.

This court had occasion to consider the propriety of such an order in Cary Manufacturing Co. v. Acme Flexible Clasp Co., 108 Fed. 873, 48 C. C. A. 118. In that case we said:

"The power of the Circuit Court to direct the payment of part or all of the fine to the complainant in an application for contempt, as a compensation for his time and outlay in prosecuting the application, has been recognized often in the Circuit Courts, especially in this circuit, and in practice is a power which ought to be exercised when the expense and trouble to which the complainant has been subjected justified its exercise."

Some of the adjudged cases in which the practice has been sanctioned are cited in the opinion in that case. There are cases in which the court upon the hearing may be able, from the depositions and from the character of the proceeding, to award the complaining party a sum which will not exceed a fair indemnity, and in which it may be proper to do so without incurring the expense of a reference to a master or the taking of further proof. In Macaulay v. White Sewing Machine Co. (C. C.) 9 Fed. 698, Judge Blatchford directed the defendant to pay a fine of $250, "to go to the plaintiff towards his expenses and counsel fees about this motion." In re North Bloomfield Gravel Mining Company (C. C.) 27 Fed. 795, Sawyer, C. J., in imposing a fine of $1,500, directed that the whole be paid to the complainant, "as a compensation, in part, for the large expenses that must have been incurred in procuring evidence and prosecuting this proceeding for contempt." In Ready Roofing Co. v. Taylor, 15 Blatchf. 94, Fed. Cas. No. 11,613, the order adjudging the defendant guilty of contempt directed an account to be taken by a master of the damages caused by the act of the defendants, and then fined them in that amount, together with the costs of the proceeding. In Doubleday v. Sherman, 8 Blatchf. 45, Fed. Cas. No. 4,020, the defendant was fined in the sum of $3,703, part of the amount being the taxed cost of the proceeding, and the balance for solicitors' and counsel's fees and disbursements, which had been ascertained upon a reference. In Searls v. Worden (C. C.) 13 Fed. 716, the court awarded the proved expenses of the complainant, but refused to allow a counsel fee which had been charged of $1,000, Judge Brown (now Mr. Justice Brown) saying, "I am not disposed, however, to impose upon the defendants the burden of paying the fees of complainant's counsel, brought here from a distance to press this motion." In re Tift (D. C.) 11 Fed. 463, the court allowed the complaining party $1,000 "in reimbursement of the expenses and trouble" of the contempt pro-

ceeding. In Wells, Fargo & Co. v. Oregon Railway & Navigation Co. (C. C.) 19 Fed. 20, the court ordered a reference to a master to ascertain what loss, expense, or injury the plaintiff had sustained by reason of the misconduct of the defendant, "with a view of enabling the court to impose by way of punishment a corresponding penalty on the defendant for the benefit of the plaintiff." In Indianapolis Water Co. v. American Straw Board Co. (C. C.) 75 Fed. 972, the court ordered the fine to be paid to the clerk for the use of the complainant, and fixed the amount at $250, "as a moderate allowance for solicitor's fees," together with taxable costs.

It will thus be seen that the practice has not been uniform, and that in some of the adjudged cases the award, like that in the present case, was for a round sum, not based upon any proved items of loss or expense, but apparently intended to cover probable loss and expenses. It is obvious that a fine exceeding the indemnity to which the complainant is entitled is purely punitive, and, notwithstanding the foregoing precedents to the contrary, we think that when it is imposed by way of indemnity to the aggrieved party it should not exceed his actual loss incurred by the violation of the injunction, including the expenses of the proceedings necessitated in presenting the offense for the judgment of the court. We are also of the opinion that when the fine is not limited to the taxable costs it should not exceed in amount the loss and expenses established by the evidence before the court. Unless it is based upon evidence showing the amount of the loss and expenses, the amount must necessarily be arrived at by conjecture, and in this sense it would be merely an arbitrary decision. Another reason why it should be based upon evidence is that otherwise the question of its reasonableness cannot be re-examined upon an appeal from a final decree in the cause, and the appellate court would have to treat the fine as a purely arbitrary one, or deny to the appellant his right of review.

The orders under review did not proceed upon any estimate of the actual loss or expenses which the complainant had incurred made from the evidence before the court, and for this reason we think they were erroneous. It may be that the sum directed to be paid to the complainant in the first proceeding was not excessive in amount, but whether it was or was not, and how much of it was intended to cover the expenses of the proceeding, and how much the loss directly suffered by the violation of the injunction, can only be conjectured. The amount directed to be paid to the complainant in the second proceeding is so large that it is difficult to believe that it was not excessive. It follows that, although so much of the orders as directs the payment of half of the fine to the clerk for the use of the United States should be affirmed, that part which directs the payment of half to the complainant should be reversed, with instructions to the court below to take evidence and order payment to the complainant of such sum only as may be found to be a sufficient indemnity.

The orders are accordingly affirmed in part and reversed in part, with instructions to the Circuit Court to proceed conformably to this opinion.