UNITED STATES ENVELOPE CO. et al. v. TRANSO PAPER CO. et al.

(District Court, D. Connecticut. March 1, 1915.)

No. 1748.

1. JUDGMENT ⬤➔701—PERSONS CONCLUDED—SUIT FOR INFRINGEMENT OF PATENT.

Where the president of a corporation, who was also owner of substantially all of its stock, actually conducted the defense to a suit for infringement against the corporation, and had full knowledge of all proceedings, he is fully bound by the decree therein.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1226; Dec. Dig. ⬤➔701.]

2. PATENTS ⬤➔326—SUIT FOR INFRINGEMENT—VIOLATION OF INJUNCTION.

Substantially all of the stock of a manufacturing company, and of a storage and sales company which acted as its agent, was owned by the president, who was also the manager of both corporations. After the granting and service of both preliminary and permanent injunctions against the manufacturing company in an infringement suit, it transferred infringing articles of the identical kind involved in the suit to the sales company, which finished, stored, and negotiated sales of the same; the sales being in fact made by and for the benefit of the manufacturing company. *Held*, on the evidence, that such transactions were deliberately intended to evade the injunctions, and rendered the manufacturing company and its president liable for contempt.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 613-619; Dec. Dig. ⬤➔326.]

3. PATENTS ⬤➔326 — INFRINGEMENT — VIOLATION OF INJUNCTION — DISPOSITION OF FINE.

In proceedings to punish for contempt for violation of an injunction in an infringement suit, it is within the power of the court to direct the payment of a part or of all of the fine imposed to the complainant as compensation for his time and outlay in prosecuting the application.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 613-619; Dec. Dig. ⬤➔326.]

In Equity. Suit by the United States Envelope Company and the Outlook Envelope Company against the Transo Paper Company and others. On rule for contempt against defendant corporation and Julius Regenstein, its president. Decree imposing fine.

Robert H. Parkinson, of Chicago, Ill., for plaintiffs.

Thomas A. Banning, of Chicago, Ill., and Arthur L. Shipman, of Hartford, Conn., for defendants.

THOMAS, District Judge. This is a hearing upon a return to a rule to show cause why the defendants Transo Paper Co. and its president, Julius Regenstein, should not be punished for violation of the preliminary and final injunctions granted herein to restrain infringement of letters patent of the United States No. 835,850, for an improvement in envelopes, of which the plaintiffs are the owners. The patent was sustained, after litigation, in the Northern District of California, and, on appeal, by the Circuit Court of Appeals for the Ninth Circuit. H. J. Heinze Co. v. Cohn, 207 Fed. 547, 125 C. C. A. 197.

Pending that appeal, the bill in this case was filed, and thereafter, on August 18, 1913, and subsequent to the decision of the Circuit Court of Appeals for the Ninth Circuit, Judge Mayer granted the preliminary injunction, to take effect September 8, 1913; the interval being allowed the defendant corporation to close its business and adjust its affairs, so as to avoid any of the acts enjoined, from and after the specified dates. The preliminary injunction was granted after notice and full hearing by the respective parties hereto. A final decree was entered on December 29, 1913, after hearing all the parties, and a permanent injunction was decreed, which was issued on January 2, 1914, service thereof having been accepted on January 5, 1914. Each injunction decree included all direct and indirect acts of infringement. The violation of the injunctions charged in the petition for commitment is selling and putting into use the exact devices enjoined, as well as the completion of such devices preliminary to such sale and use.

The defense to this petition is that all of the sales complained of (with the exception of certain alleged sales to a corporation known as the Regenstein-Veeder Company) were actually completed, although there was no delivery of the envelopes prior to September 8, 1913, the date when the temporary injunction took effect; no question having been made as to the identity of the envelopes.

[1] The Regenstein-Veeder Company does a warehouse business and stores the product of the defendant corporation for finishing and delivery to the latter's customers, and is an instrument and agent of the defendant Transo Paper Company in effectuating sales from the defendant corporation to its purchasers, who in fact purchase directly from the defendant company, and pay the defendant Transo Paper Company, instead of the Regenstein-Veeder Company. Defendant Regenstein is president and manager of the Regenstein-Veeder Company, and in fact is the owner of substantially all of its stock. He is now, and was at the time of the litigation in California, the president, manager, and substantial owner of all of the stock of the defendant corporation, and actually conducted and carried on, in behalf of Transo Paper Company and himself, the defense of the suit in California, and had actual knowledge of all proceedings therein. Both he and the defendant Transo Paper Company are therefore fully bound by the judgment in that case. Eagle Mfg. Co. v. Miller (C. C.) 41 Fed. 351, 358; Lovejoy v. Murray, 3 Wall. 1, 18 L. Ed. 129; Robbins v. Chicago City, 4 Wall. 657, 18 L. Ed. 427; Washington Gas Light Co. v. District of Columbia, 161 U. S. 316, 16 Sup. Ct. 564, 40 L. Ed. 712.

[2] The substantial question here presented is whether the transactions of the defendants with the Regenstein-Veeder Company, which were continued down to and including July 30, 1914, when the plaintiffs obtained proof of their conduct, were a violation of the preliminary and permanent injunctions. It seems clear, from the proof submitted, that they were, and that many of them had been carried on after Regenstein's attention had been specifically directed to the plaintiffs' charge that the acts that were being done with the express purpose of violating the injunctions, and under the sanction and direction

of Regenstein himself, who was using the warehouse of the Regenstein-Veeder Company for the express purpose not only of evading but of violating both the preliminary and permanent injunctions, and concealing the facts from the plaintiffs, and depriving them of their rights, which had been fully vindicated and established after expensive litigation against these defendants, both in the Ninth circuit and in this district. Hence the conclusion is imperative that the scheme of transferring infringing envelopes, after the preliminary injunction went into effect, from the Transo Paper Company's plant (which was, in legal effect, the defendant Regenstein) to the warehouse of the Regenstein-Veeder Company, which, as the plaintiffs contend and the evidence shows, was only the name for the business owned, controlled, and conducted by the same Regenstein, was a plain and deliberate violation of the injunctions, and that in fact there never was any sale or delivery to the Regenstein-Veeder Company of infringing envelopes, but merely a storage thereof in its warehouse, to be finished and then to be sold and delivered by the Transo Paper Company to its customers, which made the actual delivery thereof and received the benefit therefor. Therefore, in view of these conclusions, drawn from the evidence, the only question is as to the nature of the penalty to be imposed for violation of the injunctions.

[3] The rule in this circuit is stated in a per curiam opinion of the Circuit Court of Appeals (Judges Wallace and Shipman) in Cary Mfg. Co. v. Acme Flexible Clasp Co., 108 Fed. 873, 874, 48 C. C. A. 118, 120, as follows:

"The power of the Circuit Court to direct the payment of a part or all of the fine to the complainant in an application for contempt, as a compensation for his time and outlay in prosecuting the application, has been often recognized in the Circuit Courts, especially in this circuit, and in practice is a power which ought to be exercised when the expenses and trouble to which the complainant has been subjected justify its exercise. In re Mullee, 7 Blatchf. 23, Fed. Cas. No. 9,911; Macaulay v. Machine Co. (C. C.) 9 Fed. 698; In re Tift (D. C.) 11 Fed. 463; In re North Bloomfield Gravel-Min. Co. (C. C.) 27 Fed. 795; Wells Fargo & Co. v. Oregon Ry. & Nav. Co. (C. C.) 19 Fed. 20."

A writ of error to review this ruling was dismissed by the Supreme Court in Cary Manufacturing Co. v. Acme Flexible Clasp Co., 187 U. S. 427, 23 Sup. Ct. 211, 47 L. Ed. 244. Subsequently Judge Wallace, writing for the Circuit Court of Appeals, in Christensen Engineering Co. v. Westinghouse Air Brake Co., 135 Fed. 774, 780, 781, 68 C. C. A. 476, reiterated its conclusion as to the propriety of such an order, without the necessity of a reference to a master or the taking of further proofs. This rule is recognized by the Supreme Court in Bessette v. W. B. Conkey Co., 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997, in Re Christensen Engineering Co., 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072, in Gompers v. Buck Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, and in Re Merchants' Stock & Grain Co., 223 U. S. 639, 32 Sup. Ct. 339, 56 L. Ed. 584, and is in accord with the established practice in other circuits, particularly in patent causes. Kreplik v. Couch Patents Co., 190 Fed. 565, 571, 111 C. C. A. 381; Hendryx

v. Fitzpatrick (C. C.) 19 Fed. 810; Indianapolis Water Co. v. American Strawboard Co. (C. C.) 75 Fed. 972; Merchants' Stock & Grain Co. v. Board of Trade of Chicago, 201 Fed. 20, 30, 120 C. C. A. 582.

The plaintiffs are entitled to a decree imposing upon the defendants a fine, for the use of the plaintiffs, as a proper remedial measure, to be estimated by the pecuniary injury caused by the defendants' disobedience to the injunctions, which is fixed at $500.

Decree accordingly.