CARY MFG. CO. v. ACME FLEXIBLE CLASP CO.

(Circuit Court of Appeals, Second Circuit.   May 14, 1901.)

No. 144.

1. PATENTS—CONTEMPT—VIOLATION OF INJUNCTION.
    A defendant, which, after the issuance of an injunction prohibiting it from selling an infringing article, continues to circulate advertising matter having thereon a picture of such article, and to sell to its customers an article which, while not the one adjudged an infringement, is similar, and also an infringement, and subject to the same objections pointed out in the opinion of the court to the one in litigation, is guilty of a violation of the injunction.

2. CONTEMPT—FINE—AWARDING PART TO COMPLAINANT.
    A circuit court has power to direct the payment to a complainant of a part or all of the fine imposed on a defendant for contempt in violating an injunction as a compensation for his time and outlay in prosecuting the application.

In Error to the Circuit Court of the United States for the Southern District of New York.

This is a writ of error by the defendant below to review a judgment of the circuit court for the Southern district of New York, which imposed a fine of $2,000 upon the defendant for a violation of an injunction by that court against an infringement of letters patent No. 314,204, dated March 17, 1885, issued to William O. Swett for a staple fastener for wooden vessels.

A. G. N. Vermilya, for plaintiff in error.

Albert M. Austin (Douglas Dyrenforth, of counsel), for defendant in error.

Before WALLACE and SHIPMAN, Circuit Judges.

PER CURIAM.   This court, upon the appeal of the Cary Manufacturing Company, affirmed a decree of the circuit court for the Southern district of New York (99 Fed. 500) wherein upon a bill in equity brought by the Acme Flexible Clasp Company the Cary Company was adjudged to have infringed the Swett patent (41 C. C. A. 338, 101 Fed. 269).   In the opinion the patented fastener was said to be a "fastener having two tapered or pointed shanks at the ends of an integral thin connecting strip, the connecting strip being in such form and so proportioned as to bend readily in use, and without such elasticity as to tend to draw the shanks from the wood; the metal of the fastener, at the points of junction of the connecting strip with the shank, being sufficiently heavy to receive the force by which the shanks are driven into the wood of a package in use."   The defendant was making and selling a fastener which had tapered and pointed shanks at the ends of an integral connected strip which had been thinned and then split longitudinally.   An in-

junction was thereupon issued, and proceedings in contempt were subsequently commenced by the Acme Company to punish the alleged violation of the order. The defendant is openly manufacturing and selling staple fasteners, but says that they are made in accordance with the expired letters patent No. 88,501, dated March 30, 1869, to Purches Miles, for an improved curtain and carpet fastener, which consisted in a tack and binder formed of two penetrating points at or near the ends of a clamping bar of the same material with the tacks, and flattened so as to hold the fabric securely along an extended surface. The bar is said in the specification to have been flattened and made slightly concave on the under side so as to be stiff, and at the same time clamp the curtain or carpet. It is manifest that it was not intended that the clamping bar of the Miles fastener should be bent around the edge of a wooden vessel, but the intent was that it should be stiff, and clamp the surface of the fabric. The connecting strip of the defendant's new staple is thin enough to be flexible, although not as flexible as its predecessors, and is bent, and used for the same purpose. By what means the Miles rigid fastener has been made to become the staple which takes the place and answers the purpose of the original infringing staple we are not advised, but the result is apparent. The defendant, after knowledge that the injunction had been issued, did not cease the publication of its former advertisements, which exhibited the "split fastener," or the circulation of postal cards having the picture of the same device. It says that before the injunction was issued it had previously made a contract with several periodicals for a year's advertising, that the advertisement as prepared included a picture of the split fastener, and therefore that the further publication was not the act of the defendant; but it did not change or take steps to alter the advertisement, and it continued to circulate the old postal cards. An additional defense is that the injunction prohibited selling the fastener, but did not prohibit offering it for sale. These advertisements and postal cards showed a careless disregard of the spirit of the order. If they had stood alone, the acts would very likely not have been visited with punishment, but, coupled with the sales of the new fastener, they indicated an intent which was not consistent with innocence.

The part of the judgment of the circuit court which directed a payment by the clerk to the complainant of one-half of the fine is objected to. The power of the circuit court to direct the payment of a part or all of the fine to the complainant in an application for contempt, as a compensation for his time and outlay in prosecuting the application, has been often recognized in the circuit courts, especially in this circuit; and in practice is a power which ought to be exercised when the expenses and trouble to which the complainant has been subjected justify its exercise. In re Mullee, 7 Blatchf. 23, Fed. Cas. No. 9,911; Macaulay v. Machine Co. (C. C.) 9 Fed. 698; In re Tift (D. C.) 11 Fed. 463; In re North Bloomfield Gravel-Min. Co. (C. C.) 27 Fed. 795; Wells, Fargo & Co. v. Oregon Ry. & Nav. Co. (C. C.) 19 Fed. 20. The judgment of the circuit court is affirmed, without costs.