WILLIAM H. ROOT & others *vs.* JAMES MACDONALD & others.

Suffolk.   December 7, 1926. — June 30, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Equity Jurisdiction,* Contempt proceedings.   *Contempt of Court.   Damages,*
   In suit in equity, In contempt proceedings.   *Evidence,* In contempt
   proceedings, Competency, Materiality, Admissions.   *Witness.*

A petition in the Superior Court, by a party in a suit in equity there pending
   for attachment for contempt of another party to the suit by reason of an
   alleged violation of a decree, properly is filed in the suit and afterwards

prosecuted by itself; and, during hearings of the suit by a master on the main issue in the original bill, questions of law arising with respect to such petition properly may be reported to this court for determination of questions of law before further proceedings in the Superior Court.

At best the line of demarcation between contempts civil in character and contempts criminal in character is difficult to state with accuracy, and in close cases rests in shadow.　Per RUGG, C.J.

In a suit in equity by general contractors, subcontractors, and individual carpenters, members of a labor union, engaged in the construction of a building, against individuals and officers comprising thirty-three different labor unions, the underlying ground of controversy was whether the carpenters' union or an ironworkers' union should install certain hollow metal work in connection with elevators, and an interlocutory decree was entered enjoining the defendants from ordering or attempting to order a strike on the building, or on any other building where the plaintiffs were engaged, for the purpose of bringing about the discharge of the carpenter plaintiffs.　While the suit was pending before a master, a plaintiff filed a petition for attachment for contempt against three individual defendants, alleging a violation of the injunction resulting in the discharge of plaintiff carpenters from work on another building and that the petitioner and his partner (also a plaintiff in the original bill) and the carpenter plaintiffs in the original bill had been injured by such violation.　The prayer of the petition was that the named respondents and such other defendants as might appear to have been guilty of violating the injunction be ordered to show cause why they should not be attached for contempt for such violation.　The building in question had been completed before the hearings before the master.　*Held*, that

(1) The nature of the acts set out in the petition could not be pronounced as matter of law to be aimed at the integrity of the courts and designed to degrade the administration of justice as distinguished from a simple interference with property rights manifested by a decree entered for the benefit of a party;

(2) A ruling of law that the contempt alleged in the petition was criminal was erroneous;

(3) Under the petition, if maintained, a fine might be imposed upon a respondent who had violated the injunction and ordered paid to the petitioner, which, if not compensatory for the wrong done, might be designed to reimburse the petitioner not only for the taxable costs of suit but also for the expense of counsel fees and other disbursements in enforcing his rights;

(4) The petitioner was entitled to show whatever damages he had sustained as the natural result of the conduct of the respondents, for the purpose of enlightening the court as to the amount of fine which ought to be imposed on the respondents if found guilty of contempt;

(5) The frame and prayer of the petition together with the facts alleged, while not necessarily constituting a charge of criminal contempt or designed as a matter of law to seek a decree punitive and criminal in its nature, nevertheless were broad enough to warrant punitive treatment of the respondents provided the facts should show that there was a flouting of the authority of the court and wilful affront of its power;

(6) The petitioner, not having elected to take the position that the contempt alleged was criminal as being solely aimed at the integrity of the courts and designed to degrade the administration of justice, had a right to press only for remedial and not for punitive results; and, if he did so, the procedure as to calling the respondents as witnesses and as to the burden of proof would be analogous to that in civil cases in equity;

(7) The petitioner also had the right to press both the civil and the criminal aspects of the case; and, if he did so, the criminal aspect must be regarded as dominant and fixing the character of the trial, and he could not call the respondents as witnesses against their will.

Upon the hearing of a petition for attachment for contempt filed in a suit in equity where the dominant purpose is vindication of the authority of the court, the rule governing the trial of prosecutions for crimes appertains with reference to presumption of innocence, burden of proof, and power to compel the respondent to testify.

In a petition for an attachment for contempt brought by one plaintiff against some of numerous defendants in a suit in equity, even if the petitioner relies upon criminal, or civil and criminal, as distinguished from a solely civil character of contempt, defendants in the suit in equity other than those named in the petition for contempt may be called as witnesses and be compelled to testify.

A contention of the petitioner, in the petition for an attachment for contempt above described, was that coercive acts of respondent iron-workers had caused the discharge of the plaintiff carpenters. The respondents contended that, "although the iron workers did stop work for a day and a half, it was not a strike." As bearing upon this contention, evidence of "a general rumor current among the ironworkers . . . that they would knock off work at the lunch hour," in connection with the fact that they did stop work at that time, rightly was admitted; but general rumors among other trades, not involved in the proceedings, as to the cause of the strike, were not competent evidence.

At the hearing of the petition above described, evidence as to conversations between one of the plaintiffs and the superintendent of the general contractor of the building on which the petitioner alleged acts of the respondents had caused the plaintiff carpenters to be removed, concerning the general subject of causing the carpenters to stop work, was competent.

At the hearing of the petition above described, it was error, whether the proceedings be regarded as remedial or punitive, or partaking of the nature of both, to exclude portions of the direct testimony of one of the alleged contemners given in the main case which were in the nature of an admission touching some of the matters in dispute in the contempt proceedings, the fact that the statements were made on the witness stand in the main case not being a reason why they should not be received in the contempt proceedings.

BILL IN EQUITY, filed in the Superior Court on October 29, 1923, and afterwards amended, and described in the opinion.

An interlocutory decree was entered enjoining the defendants, their officers, agents, attorneys, and counsellors from ordering or attempting to cause any of the defendants to go on strike on the Park Square Building or any other building or buildings where the plaintiffs were engaged, either for the purpose of causing the discharge of the carpenter plaintiffs or any other carpenters represented by the Carpenters' District Council or of compelling W. A. & H. A. Root and Seeley & Lawson, plaintiffs, and others to employ iron workers or other mechanics other than the members of the United Brotherhood of Carpenters and Joiners of America upon the installation, application, erection and distribution and other work incidental thereto of hollow metal doors, windows, frames and trim in said buildings and elsewhere.

The suit was referred to a master on January 17, 1924. Further proceedings in the Superior Court and material facts are described in the opinion. The petitioner in the petition, for attachment for contempt was Henry A. Seeley; the respondents were James MacDonald, William H. Pope and E. Albert Johnson. The objections of the petitioner to the report of the master on the question of contempt, referred to in the opinion, were as follows:

"11. To the following ruling of the master, which appears. on pages 6 and 7 of his report: 'The questions which I am to decide, if I rightly apprehend the scope of the matter submitted to me, are whether or not the defendants MacDonald, Pope and Johnson, or any one of them, are guilty beyond a reasonable doubt of having directly or indirectly caused the iron workers to stop work on the Chamber of Commerce Building because the carpenters were doing work on that building which the iron workers claimed rightfully belonged to their craft, and whether or not they, or any one of them, are guilty beyond a reasonable doubt, of having made statements to, or so conducted themselves towards, the general contractor on the Chamber of Commerce Building, that there resulted in his mind a reasonable apprehension that they threatened to cause another strike of the iron workers on the Chamber of Commerce Building unless the work claimed by the iron workers was given to that craft and

taken away from the carpenters. I do not attempt to pass on the question of whether the alleged conduct of any of these three is in violation of the injunction or was in contempt of court,' because such ruling was erroneous as matter of law and was prejudicial to the plaintiffs.

"12. Because the master ruled as matter of law that the questions which he was to decide under the rule referring this petition to him were whether or not the defendants Mac-Donald, Pope and Johnson, or any one of them, were guilty beyond a reasonable doubt of having directly or indirectly violated the terms of the injunction.

"13. Because the master ruled as matter of law that he could not find a violation of the injunction on the part of the defendants MacDonald, Pope and Johnson, or any one of them, unless he was satisfied beyond a reasonable doubt that they had violated said injunction.

"14. Because the master ruled as matter of law that the plaintiffs were bound to prove that the defendants Mac-Donald, Pope and Johnson, or any one of them, were guilty of a violation of the injunction beyond a reasonable doubt rather than by a preponderance of the evidence."

"19. To the following finding and ruling of the master: 'At the close of the hearings on the contempt proceedings, counsel for the plaintiffs offered in evidence certain designated portions of the direct testimony of the defendant E. Albert Johnson, given by him in the main cause. To this counsel for the defendants in the contempt proceedings duly objected. I excluded all of this evidence so offered, and to this the plaintiffs duly excepted. The grounds upon which I excluded the evidence are as follows:

'In my opinion, the protection which the law throws around a person accused of criminal contempt by refusing to compel such person to be sworn and testify against his objection and refusal, applies equally well to statements made by such person when a witness testifying under oath in another proceeding not between the same parties or their privies. Mr. Johnson was a witness called by the plaintiffs, and he has not yet been cross-examined or put upon the witness stand by counsel for the defendants. None of his

evidence so offered has any direct bearing on the issues in the contempt proceedings, but it cannot be said that none of this evidence would justify the plaintiffs in contending, as they in substance do, that there is a general understanding or agreement among the trades that they will unite and if necessary strike in order to compel compliance with the decisions of the National Board of Jurisdictional Awards. In view of the fact that the principal cause is still pending and this is one of the questions which may ultimately require decision by the master, and I have not had the advantage and opportunity of hearing evidence from the defendants or argument of counsel, I consider it unwise and improper for me to express any opinion or make any finding of fact in relation to the existence or nonexistence of any such agreement or understanding until the court has passed upon the correctness of my ruling excluding Mr. Johnson's evidence given in the main case and offered as above stated in the contempt proceedings. As the evidence now stands, there is no evidence before me that such an agreement or understanding exists or ever existed.' because such finding and ruling was erroneous as matter of law and was prejudicial to the plaintiffs.

"20. Because of the error committed by the master in excluding certain portions of the direct testimony of the defendant E. Albert Johnson given by him in the suit in which the injunction in question was issued and as a result of which this proceeding was brought.

"21. Because the master erred in ruling, as appears on pages 17 and 18 of his report, that the law throws around a person accused of criminal contempt a protection by refusing to compel such person to be sworn and testify against his objection, and that such refusal applies equally well to statements made by such person when a witness testifying under oath in another proceeding not between the same parties or their privies."

"29. To the following rulings of the master: 'I recognize that it is no part of the master's duty to write a brief for either counsel, but as the whole question of contempt was submitted to me without argument or brief, and the question

of the admissibility of the Johnson evidence was only briefly argued orally by counsel, I deem it not improper to state my reasons and what I consider authority for its exclusion.

'The object of these contempt proceedings is not to obtain from the court a remedial order or decree, but is on the contrary a petition to have the court enter a decree or order punitive in its nature, and the alleged contempt, if established, is therefore in the nature of a criminal contempt.

'See *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418, 441. In criminal contempts as in criminal cases, the presumption of innocence obtains. Proof of guilt must be beyond reasonable doubt and the defendant may not be compelled to be a witness against himself.

'*Michaelson* v. *U. S. Ex Rel. Chicago, St. Paul, etc.*— *U. S. Supreme Court Advance Opinion,* Nov. 1, 1924, *page* 14, 17. As this is a proceeding for criminal contempt it is unlike a proceeding for civil contempt in that it is between the public and the defendants, is an independent proceeding at law, and no part of the original case. Ibid.

'The evidence offered is in no sense in the nature of a confession or statement by the defendant concerning the alleged acts, works or conduct of the accused, nor is it offered as such.

'The evidence is not offered to contradict a witness or to refresh his recollection. See *A. T. Stearns Lumber Co.* v. *Howlett,* 239 Mass. 59, 61.' because such ruling was erroneous as matter of law and was prejudicial to the plaintiffs.

"30. Because the master erred in ruling as matter of law that this proceeding was in the nature of a criminal contempt."

The objection by the respondents referred to in the opinion was "To the admission by the master of evidence with regard to a general rumor" which the master described as a "general rumor that was current among the different trades at work on the building at the time when the iron workers stopped work. This rumor was to the effect that a dispute had arisen between the steamfitters and the iron workers as to a large iron tank on the first floor of the building, which was to be lowered into position in the basement. The work

of rigging and hoisting belongs to the iron workers craft, but the steamfitters had, on December 31, erected rigging for lowering the tank.   They, however, were not working on the tank or rigging on the morning of January 2, the date when the iron workers ceased work."

After ordering the entry of an interlocutory decree overruling exceptions by both parties to the master's report on the question of contempt, *Morton,* J., reported the suit to this court for determination of questions of law involved before further proceedings in the Superior Court.

*L. A. Mayberry,* for the plaintiffs.

*F. W. Mansfield,* for the defendants.

Rugg, C.J.   This is a petition for attachment for contempt.   The original bill in equity set forth a controversy between the general contractors for the construction of the Park Square Building in Boston, a firm of subcontractors thereon, and certain individuals designated for convenience as the carpenters banded together as a union, constituting the plaintiffs, on the one side, and certain other individuals connected as officers or otherwise with thirty-three different labor unions, including the ironworkers, on the other side. The underlying ground of controversy was whether the carpenters' union or the ironworkers' union should install certain hollow metal work in connection with elevators. The bill alleged that in consequence of this controversy a strike had been called by the defendants on the Park Square Building and that the plaintiffs were apprehensive that strikes would be called on other buildings in which they were interested.   The bill was filed on October 29, 1923.   An injunction was issued on November 7, 1923, restraining the defendants from ordering or attempting to cause a strike on the Park Square Building or on any other building where the plaintiffs were engaged, for the purpose either of bringing about the discharge of the carpenter plaintiffs or other carpenters represented by the carpenters' district council, or of compelling the employment of ironworkers or others. The defendants filed an answer on December 6, 1923, and the case was referred to a master on January 17, 1924.   While hearings on the issues thus raised were in progress, this

petition for attachment for contempt entitled in the same case was filed on May 8, 1924, because of alleged violation of the terms of the injunction. The petitioner for attachment for contempt was one of the firm of subcontractors named as plaintiffs in the original bill. The petitioner alleged that he and his partner and the carpenter plaintiffs have been injured by the violation of the injunction. The proceedings have been treated as brought in behalf of all these persons, who will hereafter be described as petitioners. This firm of subcontractors was in charge of carpenters employed by another subcontractor on another building in process of construction, known as the Boston Chamber of Commerce Building. Three defendants in the original bill, MacDonald, Pope and Johnson, and others unknown to the petitioners, were named as those who had violated the injunction. The allegations of this petition for attachment for contempt were that the defendants, by threats and intimations that they would cause labor troubles on the Chamber of Commerce Building, had persuaded the general contractor on that building to order the removal therefrom of certain of the carpenter plaintiffs working on that building, and that the three named defendants ordered members of their unions from the building; that as a consequence the general contractor notified the carpenters to cease working on the building and thereupon the members of the unions represented by the three named defendants returned to work. The prayer of the petition was that the named defendants and such other defendants as may appear to have been guilty of violating the injunction be ordered to show cause why they should not be attached for contempt for such violation. On May 16, 1924, the petition for attachment for contempt was referred to the same master, and hearings on the original bill in the meantime were suspended. The rule to the master in the petition for attachment for contempt required him "to hear the parties and their evidence" and forthwith to "file his report." At the hearing before the master various objections were taken. To the master's report both sides filed objections and exceptions. In the Superior Court an interlocutory decree

was entered overruling all objections and exceptions and confirming the master's report.   Both sides appealed.   The questions thus raised have been reported to this court.

At the argument in this court one main difference between the parties is as to the nature of the contempt alleged in the petition and shown by the master's report.   It is the contention of the petitioners that it is entirely civil in character and is governed throughout by rules of civil procedure in equity; while the defendants contend that it is wholly criminal and is governed by the principles of criminal law.

It has been stated in argument without contradiction that it is matter of common knowledge that the building with reference to which this controversy arose has been long since completed.   This is assumed to be so.   It is manifest, therefore, that the proceeding for contempt cannot afford any immediate relief to the petitioners in the sense of undoing the wrong alleged to have been done by the defendants. Whatever they did has been done and has had its complete effect on the rights of the petitioners so far as concerns the particular building.   The master stated as part of his report that the "object of these contempt proceedings is not to obtain from the court a remedial order or decree, but is on the contrary a petition to have the court enter a decree or order punitive in its nature, and the alleged contempt, if established, is therefore in the nature of a criminal contempt." Apart from its context this statement is equivocal, being susceptible of the construction either (1) that it is a finding of fact based on unreported evidence and hence binding upon this court, or (2) that it is a ruling of law followed by the master in conducting the hearings and reaching his conclusions.   The context in which this statement occurs leads to the conclusion that it is a ruling of law.   The statement is prefaced by remarks to the effect that the whole question of contempt was submitted to the master without argument or briefs and hence it is deemed proper "to state my reasons and what I consider authority" for the exclusion of evidence. The statement is followed by a brief reference to two decisions.   Therefore we are of opinion that it was a ruling of law.

Practice and procedure as to contempts vary in different jurisdictions and are perhaps affected in some instances by statutes not uniform in terms.   See, for example, *Michaelson* v. *United States,* 266 U. S. 42, 65; *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418, 444, 446, 451; *In re Freston,* 11 Q.B.D. 545, 552–554, 556; *Scott* v. *Scott,* [1913] A. C. 417, 440, 456–458, 486; *People* v. *Marr,* 181 N. Y. 463, 470, 471; *Hake* v. *People,* 230 Ill. 174.   Apparent divergence between the judgments or the utterances of different courts may be due in no small degree to variations in practice in the several jurisdictions.   But it is not necessary in this connection to discuss these and other adjudications, because our own decisions are clear as to the procedure in contempt proceedings for the violation of orders and decrees of court arising in the course of private litigation.   It was said by Chief Justice Gray in *Winslow* v. *Nayson,* 113 Mass. 411, 420, respecting a complaint for contempt by violation of an injunction, that it "has been irregularly treated as a distinct cause, and entered upon the docket as such.   It is really but an incident to the principal suit, and all the papers relating to it should be filed with the other papers in the case."   In *Cartwright's Case,* 114 Mass. 230, 239, which grew out of misappropriation of funds by a receiver and where a punitive sentence of imprisonment was imposed, the same eminent Chief Justice said, "An application for an attachment for contempt is to be made and filed in the original cause; after the attachment has issued, the proceedings are distinct and are criminal in their nature."   In *Hamlin* v. *New York, New Haven & Hartford Railroad,* 170 Mass. 548, petitions were filed praying for such judgment as the court might impose as a penalty for contempt in violation of a final decree in equity.   It was said at page 550, "Although the proceedings grew out of and were incident to the original cause, and the petitions were filed in it, they were distinct from it."   These principles were reiterated in *New York Central Railroad* v. *Ayer,* 253 Mass. 122, 128, 129, which was a proceeding for the violation of a final decree in equity.   See also *Cherry* v. *Cherry,* 253 Mass. 172.   The original proceeding in the case at bar was a suit in equity.   The petition for attachment for contempt was

filed in that case, but has been prosecuted by itself and is rightly here by report. The practice established by our decisions thus was followed.

It has not been necessary hitherto for this court to examine carefully the nature of contempt proceedings for the violation of an injunction arising from the performance by one or more of the defendants of acts forbidden by the court. Reference has been made in several of our decisions to the distinction between civil and criminal contempts. See *New York Central Railroad* v. *Ayer, supra,* page 128, and cases there collected. In that judgment at page 129 occur these words: "Whatever else may be said about proceedings for contempt, it is plain that they are *sui generis* in their nature and not strictly either civil or criminal, as those terms commonly are used." In *Myers* v. *United States,* 264 U. S. 95, at page 103 is this language: "contempt proceedings . . . are *sui generis* — neither civil actions nor prosecutions for offenses, within the ordinary meaning of those terms — and exertions of the power inherent in all courts to enforce obedience, something they must possess in order properly to perform their functions."

It is manifest that the imposition of fine or imprisonment is not the test by which to distinguish between civil and criminal contempts. Originally and until the enactment of remedial statutes or rules, the only way by which a court of equity could enforce its ordinary and final decrees was by attachment for contempt. That power is still retained. *White* v. *White,* 233 Mass. 39, 43. Process for contempt is an important means by which probate courts enforce orders and decrees for separate support, alimony, support of children, and kindred matters concerning domestic relations. G. L. c. 215, § 34. It has never been supposed that these classes of contempt were criminal as commonly administered. So, also, it was held that imprisonment of a contumacious defendant for refusal to pay a debt ordered to be paid by a common law court pursuant to the terms of a statute was not criminal. *Brown's Case,* 173 Mass. 498. Indeed, imprisonment for debt is not a criminal proceeding. See *Commonwealth* v. *Badlam,* 9 Pick. 362; *Opinion of the Justices,* 251

Mass. 617, 619.    In *Frankel* v. *Frankel*, 173 Mass. 214, it was held that imprisonment of a husband for contempt for failure to pay money ordered to be paid to his wife in a suit in equity would in effect "be to punish him for something for which he could not be punished in any other way and which would not be a crime.    But the object of proceedings for contempt . . . would be coercive in its character, and not in any just sense a punishment."    In *McCann* v. *Randall*, 147 Mass. 81, 90, is found this: "Proceedings for contempt may be either for the purpose of inflicting punishment upon one who has wilfully disobeyed a lawful order of the court, or for the purpose of obtaining the result which might have been reached by the enforcement of its decree but for the intervention of the wrongful act of the party violating its order, or in appropriate cases for both purposes."    It was said in *In re Debs, petitioner*, 158 U. S. 564, 596, a case where defendants in an equity suit had been committed to jail for committing acts forbidden by an injunction, "a court, enforcing obedience to its orders by proceedings for contempt, is not executing the criminal laws of the land, but only securing to suitors the rights which it has adjudged them entitled to."    In *Bessette* v. *W. B. Conkey Co.* 194 U. S. 324, 329, after referring to misconduct in the presence of the court or disturbance of its proceedings as being "more like an ordinary crime which affects the public at large, and the criminal nature of the act" as the dominant feature, the opinion discusses at length the civil aspects of a contempt committed against the right of a private litigant and shows that relief remedial in nature may be awarded by the court for the benefit of the injured party.    The facts in *Doyle* v. *London Guarantee & Accident Co. Ltd.* 204 U. S. 599, were that the defendants were ordered to produce papers and books in court on or before a specified time upon pain of paying costs and in default thereof of being imprisoned for sixty days; they refused to comply with the order, were adjudged guilty of contempt, and a fine of $250 was imposed on terms and conditions specified.    It was held (page 607) that the object of this order was "to obtain information for the benefit of the plaintiff in the suit to which the court found it entitled,

and that the punishment of fine and imprisonment, which was in the alternative, was imposed, not for the vindication of the dignity or authority of the court, in the interests of the public, but in order to secure, for the benefit of the plaintiff, a compliance with the order of the court as to the production of the books." We find nothing in *Gompers* v. *United States,* 233 U. S. 604, *Michaelson* v. *United States,* 266 U. S. 42, or in *Ex parte Grossman,* 267 U. S. 87, all concerning contempts confessedly involving criminal features, at variance with what already has been said. In the opinion by Chief Justice Taft in the Grossman case, the distinction between contempts is stated at page 111 as follows: "For civil contempts, the punishment is remedial and for the benefit of the complainant . . . . For criminal contempts the sentence is punitive in the public interest to vindicate the authority of the court and to deter other like derelictions."

Thus it appears that there are wide fields where jurisdiction by contempt proceedings is frequently exercised and punishment by fine or even by imprisonment imposed which is not regarded as criminal in nature. The use of the word "criminal" in connection with contempts has sometimes been deprecated and is not strictly accurate, because numerous incidents of criminal trials are inapplicable to trials for contempt. *People* v. *Court of Oyer & Terminer,* 101 N. Y. 245. Nevertheless, it has come into common use. For convenience we adopt it in the case at bar.

Numerous attempts have been made to formulate a test by which to distinguish remedial proceedings for contempt, which involve private interests and are civil in nature, from punitive proceedings for contempt, which involve the public interest and are criminal in nature. In *In re Merchants' Stock & Grain Co. petitioner,* 223 U. S. 639, where an order had been entered in contempt proceedings imposing a fine, three fourths to be paid to the complainant and one fourth to the United States, it was said that "Such an order against an offending suitor is deemed remedial when its purpose is to indemnify the injured suitor or coercively to secure obedience to a mandate in his behalf, and is deemed punitive when its

purpose is to vindicate the authority of the court by punishing the act of disobedience as a public wrong. As was said in *Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, 441: 'It is not the fact of punishment but rather its character and purpose that often serve to distinguish between the two classes of cases.'" At best the line of demarcation between contempts civil and contempts criminal in character is difficult to state with accuracy, and in close cases rests in shadow.

It is to be observed that in the petition in the case at bar violation of the injunction and consequent discharge of the carpenters from work are alleged. These allegations contain no element stamping this indubitably as a distinctly criminal proceeding. Neither in the petition nor in the master's report are shown hostility to the court as the means afforded by government for the administration of justice, acts of contumacy toward the court or toward its orders, abusive or inflammatory language, or silent and outwardly inoffensive conduct disclosing a fixed purpose to flout the court and its orders. There is the simple averment of violation of the injunction. Of course that in itself is wrong enough; but there is not about it necessarily a distinctively criminal feature. It does not go so far as to show acts in willful defiance of the authority and power of the court, except as failure to conform to any lawful order of a court partakes to some extent of defiance. Examining only the nature of the acts here alleged to constitute the contempt, they cannot be pronounced as matter of law to be aimed at the integrity of the courts and designed to degrade the administration of justice as distinguished from a simple interference with property rights manifested by a decree entered for the benefit of a party. Manifestly the case does not fall within the class illustrated among our own decisions by *Cartwright's Case*, 114 Mass. 230, *Telegram Newspaper Co.* v. *Commonwealth*, 172 Mass. 294, *Hurley* v. *Commonwealth*, 188 Mass. 443, *Globe Newspaper Co.* v. *Commonwealth*, 188 Mass. 449, *Walton Lunch Co.* v. *Kearney*, 236 Mass. 310, and *Commonwealth* v. *McNary*, 246 Mass. 46, in all of which acts subversive of the administration of justice

and the functions of courts to that end were under considera-
tion.   It was said in *Gompers* v. *Bucks Stove & Range Co.*
221 U. S. 418, 441, "Contempts are neither wholly civil
nor altogether criminal.   And 'it may not always be easy
to classify a particular act as belonging to either one of
these two classes.   It may partake of the characteristics of
both.'   *Bessette* v. *Conkey,* 194 U. S. 329."   If this be ac-
cepted as the law, the present petition for contempt cannot
be pronounced on its face criminal in nature.   It further
is said in the Gompers case at page 448 that the classifica-
tion, whether a particular proceeding is a civil or a criminal
contempt, depends upon the question, "whether the punish-
ment is punitive, in vindication of the court's authority, or
whether it is remedial by way of a coercive imprisonment, or
a compensatory fine payable to the complainant."   The
distinction stated at page 443, namely, "The distinction
between refusing to do an act commanded, — remedied by
imprisonment until the party performs the required act; and
doing an act forbidden, — punished by imprisonment for a
definite term; is sound in principle, and generally, if not
universally, affords a test by which to determine the char-
acter of the punishment," even if adopted in its fullness,
sheds no light upon the present case, because there has been
no punishment.   That test is not here pertinent.

.   As already pointed out, the master ruled as matter of law
that this was a criminal contempt.   Apparently he made
this ruling in reliance upon *Gompers* v. *Bucks Stove & Range
Co., supra,* and *Michaelson* v. *United States,* 266 U. S. 42.
But, as has been shown, these decisions do not support the
ruling.   This further appears from the decision in the Gom-
pers case at pages 449, 450, where it was said that if the
"sentence for criminal contempt was erroneously entered in
a proceeding which was a part of the equity cause, it would
be necessary to set aside the order of imprisonment, examine
the testimony and thereupon make such decree as was
proper, according to the practice in equity causes on appeal.
And, if upon the examination of the record it should appear
that the defendants were in fact and in law guilty of the con-
tempt charged, there could be no more important duty than

to render such a decree as would serve to vindicate the jurisdiction and authority of courts to enforce orders and to punish acts of disobedience. For while it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration whose judgments and decrees would be only advisory. If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery. This power 'has been uniformly held to be necessary to the protection of the court from insults and oppressions while in the ordinary exercise of its duties, and to enable it to enforce its judgments and orders necessary to the due administration of law and the protection of the rights of suitors.' *Bessette* v. *Conkey*, 194 U. S. 324, 333." This discussion shows, as we understand it, that it is the view of the United States Supreme Court that, in an equity case and as a part of civil relief, consideration by the court might and would in appropriate instances be given to contempt committed by doing acts forbidden by an injunction and remedy afforded to the injured party. The court in the Gompers case declined to treat the record then under consideration on that footing because the parties had made a complete settlement of all matters involved in the original suit. That situation does not exist in the case at bar because the original suit is pending.

The contempt in the case at bar is alleged to consist in having done an act forbidden by the injunction rather than in refusing to do an act commanded by the injunction. That factor is not a sure test by which to distinguish a criminal from a civil contempt. Important civil right may arise from or depend upon the doing of the act enjoined. It was said in *Bessette* v. *W. B. Conkey Co.* 194 U. S. 324, at page 329, "Manifestly if one inside of a court room disturbs the order of proceedings, or is guilty of personal misconduct in the

presence of the court, such action may properly be regarded as a contempt of court, yet it is not misconduct in which any individual suitor is specially interested. It is more like an ordinary crime which affects the public at large, and the criminal nature of the act is the dominant feature. On the other hand, if in the progress of a suit a party is ordered by the court to abstain from some action which is injurious to the rights of the adverse party, and he disobeys that order, he may also be guilty of contempt, but the personal injury to the party in whose favor the court has made the order gives a remedial character to the contempt proceeding. The punishment is to secure to the adverse party the right which the court has awarded to him. He is the one primarily interested. . . . It may not be always easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both. A significant and generally determinative feature is that the act is by one party to a suit in disobedience of a special order made in behalf of the other. Yet sometimes the disobedience may be of such a character and in such a manner as to indicate a contempt of the court rather than a disregard of the rights of the adverse party." This language, if accepted as stating a test, is applicable to the facts revealed on the present record. Measured by it, plainly a ruling of law could not rightly have been made that the present proceeding was not remedial but was criminal. No discussion is required to demonstrate that substantial injury, compensable in damages, might be caused to artisans or others from wrongful conduct resulting in their discharge from employment terminable at will. *Berry* v. *Donovan,* 188 Mass. 353. *Willett* v. *Herrick,* 242 Mass. 471, 480. *Truax* v. *Raich,* 239 U. S. 33, 38. Injury of that nature would be private and civil. Temporary or permanent preservation of such right of employment by injunction puts it on a foundation at least as secure as a simple contract for the purpose of assessing damages.

The question whether the court can ascertain damages flowing from breach of an injunction in a contempt proceeding and order a fine measured in whole or in part by such

damages to be paid by the party in contempt to the injured party was referred to in *Campbell* v. *Justices of the Superior Court,* 187 Mass. 509, 512, 513, and left undecided. A formidable body of authority there cited supports the view that such relief can be granted. In addition to the cases there collected, the following adjudications support the view that such relief is within the power of a court. *Barber* v. *George R. Jones Shoe Co.* 80 N. H. 507, 515, 516. *Christensen Engineering Co.* v. *Westinghouse Air Brake Co.* 68 C. C. A. 476, 483, 484, and cases cited. *Lorick & Lowrance* v. *Motley,* 69 S. C. 567, 571, 572. *Stimpson* v. *Putnam,* 41 Vt. 238. *Cary Mfg. Co.* v. *Acme Flexible Clasp Co.* 48 C. C. A. 118, 120; *S. C.* 108 Fed. Rep. 873. *Merchants' Stock & Grain Co.* v. *Board of Trade of Chicago,* 120 C. C. A. 582, 592, 593. *Kreplik* v. *Couch Patents Co.* 111 C. C. A. 381. Relief of this nature is referred to and seemingly recognized as proper in the Gompers case, 221 U. S. at page 444, where it was said (with collection of supporting authorities), "The only possible remedial relief for such disobedience [of an injunction] would have been to impose a fine for the use of the complainant, measured in some degree by the pecuniary injury caused by the act of disobedience." Compensation by way of damages in contempt proceedings for the deliberate doing of acts forbidden by injunction was recognized as proper in *Union Tool Co.* v. *Wilson,* 259 U. S. 107. The granting of such relief appears to be common in patent cases. A fine may be imposed upon a defendant, who has violated an injunction, and ordered paid to the plaintiff, which, if not compensatory for the wrong done, may be designed to reimburse the plaintiff not only for the taxable costs of suit but also for expenses of counsel fees and other disbursements in enforcing his rights. *Cary Mfg. Co.* v. *Acme Flexible Clasp Co.* 48 C. C. A. 118; *S. C.* 108 Fed. Rep. 873, and cases there collected. See, also, *Stiles* v. *Municipal Council of Lowell,* 233 Mass. 174, 183. There are authorities to the contrary: *Eads* v. *Brazelton,* 22 Ark. 499. *Dowagiac Mfg. Co.* v. *Minnesota Moline Plow Co.* 124 Fed. Rep. 736. *Beverly* v. *Roberts,* (Texas) 215 S. W. Rep. 975. *Swift* v. *State,* 63 Ind. 81. *Morris* v. *Whitehead,* 65 N. C. 637. *Dunlavy* v. *Doggett,* 38 Mont. 204. *Barnes &*

*Co.* v. *Chicago Typographical Union*, 232 Ill. 424.   *O'Rourke* v. *Cleveland*, 4 Dick. 577.   Compare *Thompson* v. *Pennsylvania Railroad*, 3 Dick. 105, 111, 112.   In other states such damages are allowed in accordance with governing statutes. *Socialistic Co-operative Publishing Association* v. *Kuhn*, 164 N. Y. 473.   *Chapel* v. *Hull*, 60 Mich. 167, 175.   *Stollenwerk* v. *Klevenow*, 151 Wis. 355.   *Robins* v. *Frazier*, 5 Heisk. 100. *Campbell* v. *Motion Picture Machine Operators of Minneapolis*, 151 Minn. 238.   *State* v. *North Shore Boom & Driving Co.* 55 Wash. 1.   We think that the weight of authority and the better reasoning support the view that such relief may be granted.   By the ruling of the master to the effect that this is a criminal proceeding, the petitioners were precluded from urging these and whatever other issues might exist requiring for their relief remedial measures of a civil nature.

It follows that the petitioners were entitled to show whatever damages they had sustained as the natural result of the conduct of the defendants, for the purpose of enlightening the court as to the amount of fine which ought to be imposed on the defendants if found guilty of contempt.   There was, therefore, error in the ruling of the master to the effect that the proceedings for attachment for contempt were criminal in nature.   Like error taints the decree confirming the master's report.   Since that decree must be reversed, the case may be tried again and points likely then to arise need to be considered.

The frame and prayer of the petition together with the facts alleged, while not constituting a charge of criminal contempt as ruled by the master or designed as matter of law to seek a decree punitive and criminal in its nature, nevertheless are broad enough to warrant punitive treatment of the defendants provided the facts should show that there was a flouting of the authority of the court and wilful affront of its power.   See *Casson* v. *McIntosh*, 199 Mass. 443.   In numerous contempt cases a sentence has been imposed partly remedial and partly punitive, partaking both of civil and criminal features.   *Matter of Christensen Engineering Co.* 194 U. S. 458.   *In re Merchants' Stock & Grain Co. petitioner*, 223 U. S. 639.   *Union Tool Co.* v. *Wil-*

*son,* 259 U. S. 107.   With respect to such cases founded upon the doing of acts prohibited by the injunction, where upon conviction the accused is punished by fine or imprisonment or both, it was said in *Michaelson* v. *United States,* 266 U. S. 42, at page 65, "True, the fine may be paid to the United States or to the complainant or divided among the parties injured by the act, as the court may direct"; but when a fine is ordered paid wholly to the government or partly to the government and partly to the plaintiff, and when imprisonment is imposed on the contemner, the authorities last cited indicate that the proceeding for contempt is in the interest of the public welfare and in vindication of the authority of the court, and that this feature dominates the proceeding and fixes its character as punitive rather than remedial.

Doubtless the petitioners pressed the criminal aspect of the case when the master ruled that that was the only course open.   But they ought not to be compelled to that course. There is nothing to show that they elected to take that position before the master.   At the bar of this court they argue that this is a civil contempt.   They have the right to press only for remedial and not for punitive results.   If they adopt that course, they have the right to treat the procedure as entirely remedial.   In that event the procedure will be analogous to civil causes in equity.   They may call the defendants as witnesses, and be subject to the burden of proof in accordance with the usual equity practice.   *Hake* v. *People,* 230 Ill. 174.   *Rothschild & Co.* v. *Steger & Sons Piano Manuf. Co.* 256 Ill. 196.   *State* v. *Verage,* 177 Wis. 295.   See *Scott* v. *Scott,* [1913] A. C. 417, 456–459.   Even in somewhat analogous cases where the act under inquiry although civil in form is penal in nature, the rules of evidence prevailing in civil rather than criminal cases are held applicable.   It was said in *Grella* v. *Lewis Wharf Co.* 211 Mass. 54, 59, "Thus in complaints under the bastardy statute, it is sufficient to prove the charge by a preponderance of the evidence.   *Richardson* v. *Burleigh,* 3 Allen, 479.   *Young* v. *Makepeace,* 103 Mass. 50.   So in an action to recover a forfeiture for the sale of intoxicating liquor to a minor, the rule requiring proof beyond a reasonable doubt does not apply.

*Roberge* v. *Burnham,* 124 Mass. 277. So, also in an action on a policy of insurance the defendant is not bound to prove beyond a reasonable doubt that the fire was occasioned by the willful and fraudulent act of the plaintiff. *Schmidt* v. *New York Union Mutual Fire Ins. Co.* 1 Gray, 529." The Grella case was an action to recover the punitive penalty established by what is now G. L. c. 229, § 5, for causing by negligence the death of a human being, and it was held to be governed by the rules of civil and not of criminal procedure. The same principle is applicable to civil actions for recovery of the penalty provided by G. L. c. 229, § 3, where the remedy afforded against a railroad, street railway, or electric railroad for causing death of a human being under conditions there specified may be either by indictment or by action of tort. *Kelley* v. *Boston & Maine Railroad,* 135 Mass. 448, 449. *Boott Mills* v. *Boston & Maine Railroad,* 218 Mass. 582, 588, 589. *Sullivan* v. *Hustis,* 237 Mass. 441, 446, 447. *Arruda* v. *Director General of Railroads,* 251 Mass. 255, 260, 261. These decisions are closely analogous on this point to remedial contempt proceedings.

The petitioners have the right also to press both the civil and criminal aspects of the case. If they treat the petition for contempt as having this dual aspect, further questions arise as to burden of proof and the right to call the defendants as witnesses. There are numerous particulars in which a proceeding for contempt, even when its object and result are wholly punitive, differs from an ordinary criminal proceeding. This is pointed out with ample citation of authorities in *Merchants' Stock & Grain Co.* v. *Board of Trade of Chicago,* 120 C. C. A. 582; *S. C.* 201 Fed. Rep. 20. For example: (1) The trial is summary and not in the regular course. (2) There is no right of trial by jury. (3) Courts of chancery and other courts without criminal jurisdiction can try and punish so called criminal contempt. *Eilenbecker* v. *District Court of Plymouth County,* 134 U. S. 31, 36. *Bessette* v. *W. B. Conkey Co.* 194 U. S. 324, 336, 337. See in this connection G. L. c. 12, § 27. As was said in *Ex parte Grossman,* 267 U. S. 87, at page 117, "Contempt proceedings are *sui generis* because they are not hedged about with all the

safeguards provided in the bill of rights for protecting one accused of ordinary crime from the danger of unjust conviction." It is not necessary to examine all the differences that may exist between contempt proceedings and ordinary criminal practice. It was said in the Gompers case, 221 U. S. at page 444, "it is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself." In *Michaelson* v. *United States*, 266 U. S. 42, at page 66 occurs this statement: "In criminal contempts, as in criminal cases, the presumption of innocence obtains. Proof of guilt must be beyond reasonable doubt and the defendant may not be compelled to be a witness against himself." To the same effect in substance are *Staley* v. *South Jersey Realty Co.* 83 N. J. Eq. 300; *Drakeford* v. *Adams*, 98 Ga. 722, 724; *Bates's Case*, 55 N. H. 325. See also *O'Shea* v. *O'Shea*, 15 P. D. 59.

At first sight there seems to be some contrariety of view on this point among the State courts. But we think that this apparent disagreement rests chiefly upon statutory provisions rather than upon disagreement as to fundamental principles. *Ex parte Gould*, 99 Cal. 360, is usually cited in support of the proposition that a defendant in contempt cannot be called as a witness against his will. That case arose under a statute declaring contempt of court to be a misdemeanor. Thus it was by statute put upon the same footing as crimes. The decision rests upon the statute and hence is not an authority touching proceedings at common law in the absence of a statute. The same is true of *In re Nickell*, 47 Kans. 734. Cases often cited to the effect that a defendant in a contempt case can be compelled to give evidence against himself are *State* v. *Reilly*, 40 Wash. 217, 220, and *State* v. *Sieber*, 49 Ore. 1, 10, 11. Those decisions both rest seemingly upon statute providing that the court should "examine the defendant," and hence these also are not authorities as to proceedings at common law apart from statute. The decision in *Hake* v. *People*, 230 Ill. 174, rests upon the practice established in that State differing somewhat from our own. *State* v. *Verage,* 177 Wis. 295, also

depends in part upon statutory provisions and does not touch this exact question. There is no decision of our own court covering this precise point. We believe from our experience that it has been the practice of our courts not to compel a defendant in contempt to testify against himself where the object of the proceeding is the "vindication of public authority and the majesty of the law," and where the punishment is imposed for "an offence, committed directly against the authority and dignity of the court," as distinguished from remedial or coercive measures for the protection of private interests ordered on account of "mere disobedience of an order made for the benefit of a party." *Hurley* v. *Commonwealth*, 188 Mass. 443, 445. We think that this practice conforms to the spirit of our institutions and is in harmony with the principles of our Declaration of Rights. It is now the rule of the Supreme Court of the United States, which must be followed by all inferior federal courts. It has in its support adjudications of other courts entitled to respect. This rule thus established is here recognized with reference to presumption of innocence, burden of proof, and power to compel the defendant to testify, as applicable in cases of contempt where the dominant purpose is vindication of the authority of the court and promotion of the public welfare by protection of the majesty of the law from attack.

If the petitioners at the new trial rely upon the dual aspect of the petition for attachment for contempt and seek to establish both civil and criminal liability for the contempt, the criminal feature must be regarded as dominant and fixing the character of the trial, and they cannot call the defendants as witnesses against their will. This is the rule followed in determining the character of the proceeding, whether civil or criminal, for purposes of review when both civil relief and criminal punishment are imposed on one petition. *Matter of Christensen Engineering Co.* 194 U. S. 458. *In re Merchants' Stock & Grain Co., petitioner*, 223 U. S. 639. *Union Tool Co.* v. *Wilson*, 259 U. S. 107. It seems applicable also, to the trial of the facts.

Questions of evidence remain to be considered. The

exception of the defendants to the ruling of the master, affirmed by the Superior Court, that the defendants other than the three named in the petition for attachment for contempt could be called as witnesses and compelled to testify, cannot be sustained. The ruling had already been made that the hearing and evidence on the contempt matter should be confined to the three named defendants. The others rightly could be called as witnesses.

One contention of the defendants before the master was that, "although the iron workers did stop work for a day and a half, it was not a strike." As bearing upon this contention, evidence of "a general rumor current among the ironworkers . . . that they would knock off work at the lunch hour," in connection with the fact that they did stop work at that time, was admissible. General rumors among other trades, not involved in the proceeding, as to the cause of the strike are not shown to have been competent. *Blaisdell* v. *Bickum,* 139 Mass. 250.

Evidence as to the conversations between the superintendent of the general contractor on the Chamber of Commerce Building and one of the plaintiffs concerning the general subject of causing the carpenters to stop work was competent. *Hubbard* v. *Allyn,* 200 Mass. 166, 174. *Lawlor* v. *Loewe,* 235 U. S. 522, 533.

There was error in the exclusion of portions of the direct testimony of the defendant Johnson given in the main case. It was in the nature of an admission touching some of the matters in issue in the contempt proceeding. Whether that proceeding be regarded as remedial or punitive, or partaking of the nature of both, it was admissible. The fact that the statements were made on the witness stand in the main case is no reason why they should not be received in the contempt proceedings. *Commonwealth* v. *Bradford,* 126 Mass. 42, 45, 46.

The result is that the interlocutory decree is reversed. The petitioners' exceptions based upon objections 11, 12, 13, 14, 19, 20, 21, 29 and 30, and the defendants' exception based upon objection 2, must be sustained.

*Ordered accordingly.*