*Pardon. Constitutional Law*, Pardon. *Contempt. Words,* "Offences," "Conviction."

The Governor by and with the advice of the Executive Council has power under Part II, c. 2, § 1, art. 8 of the Constitution of the Commonwealth to pardon one who has been adjudged guilty of and sentenced for contempt of court in bribing jurors who might be drawn to sit in the trial of an indictment against him, although there be pending before the Supreme Judicial Court a petition for a writ of error to reverse the judgment for contempt.

On December 8, 1938, His Excellency the Governor and the Executive Council adopted the following order:

Whereas, The accompanying communications from Edmund L. Dolan and J. Walter Quinn, both under date of December 6, 1938, addressed to His Excellency the Governor and the Executive Council, have been received by His Excellency, Governor Charles F. Hurley and the Executive Council. In substance these communications are applications for pardon for criminal contempt of court; and

Whereas, Article VIII of Section I of Chapter II of the Constitution of the Commonwealth provides in part: "The power of pardoning offenses, except such as persons may be convicted of before the Senate by an impeachment of the house, shall be in the governor, by and with the advice of council . . ."; and

Whereas, The Governor and Council are advised that there are now pending before the Supreme Judicial Court petitions for writs of error to reverse the judgments of the Superior Court adjudging said Edmund L. Dolan

and J. Walter Quinn guilty of criminal contempt, which petitions have been argued before the Full Bench of the Court and are now under advisement of the Court; and WHEREAS, Said communications present important questions of law within the meaning of Article II, Chapter III of Part The Second of the Constitution of the Commonwealth, as to the jurisdiction of the Governor and Council to act thereupon;

Therefore, before proceeding to any consideration of the contents thereof, it is

ORDERED, That the opinion of the Justices of the Supreme Judicial Court be required by the Governor and Council upon the following important questions of law:

First. Has the Governor by and with the advice of the Executive Council power to pardon for criminal contempt of court?

Second. If the opinion of the Justices is in the affirmative upon the foregoing question, have the Governor and the Executive Council power to consider and act upon said matter in view of the pendency before the Supreme Judicial Court of the petitions for writs of error aforesaid?

On December 14, 1938, the Justices returned the following answers:

To His Excellency the Governor and The Honorable Council of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court, in reply to your order of December 8, 1938, a copy of which is hereto annexed, respectfully express their opinion as follows:

The questions of law upon which the opinion of the Justices is required relate, as appears from the order, to the power of the Governor, "by and with the advice of council," to pardon Edmund L. Dolan and J. Walter Quinn, who have been adjudged by the Superior Court guilty of contempt of court and have applied for pardons. We assume, though the order leaves the matter somewhat in doubt, that the Governor has under consideration the exercise of the power of pardon in favor of said Dolan and

said Quinn, and the submission of his action in this respect to the Council for advice which might make such action effective (see *Opinion of the Justices*, 190 Mass. 616; *Opinion of the Justices*, 210 Mass. 609, 611; *Juggins* v. *Executive Council*, 257 Mass. 386), and that an opinion on the questions of law submitted is desired "respecting pending matters, in order that assistance may be gained in the performance of present duties." See *Opinion of the Justices*, 216 Mass. 605. See also *Answer of the Justices*, 290 Mass. 601, 603. The order is not to be construed as submitting to the Justices for their opinion questions of fact or of the wisdom or expediency of granting the pardons applied for, or purely abstract questions of law, none of which questions could properly be answered. Constitution, Part II, c. 3, art. 2. *Opinion of the Justices*, 120 Mass. 600. *Opinion of the Justices*, 126 Mass. 557, 566. *Answer of the Justices*, 148 Mass. 623, 626. *Opinion of the Justices*, 190 Mass. 611, 613. *Answer of the Justices*, 217 Mass. 607, 611–612. *Dinan* v. *Swig*, 223 Mass. 516, 519. We answer the questions of law submitted so far as they relate to the power to pardon said Dolan and said Quinn, and in the light of the facts disclosed by the order and by the proceedings in the full court on the writs of error referred to in such order.

The power to pardon is conferred by the Constitution of the Commonwealth, Part II, c. 2, § 1, art. 8, which reads as follows: "The power of pardoning offences, except such as persons may be convicted of before the senate by an impeachment of the house, shall be in the governor, by and with the advice of council: but no charter of pardon, granted by the governor, with advice of the council before conviction, shall avail the party pleading the same, notwithstanding any general or particular expressions contained therein, descriptive of the offence or offences intended to be pardoned."

The power to pardon so conferred extends only to "offences." Consequently it is important to determine whether the contempts of which said Dolan and said Quinn were adjudged guilty constitute "offences" within the meaning of the constitutional provision. We think that they do.

Contempts have been classified broadly as civil and criminal (*Hurley* v. *Commonwealth*, 188 Mass. 443, 445; *New York Central Railroad* v. *Ayer*, 253 Mass. 122, 128–129; *Root* v. *MacDonald*, 260 Mass. 344, 355–357; *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 372–373), though it has been said of proceedings for contempt that "it is plain that they are . . . not strictly either civil or criminal, as those terms commonly are used," *New York Central Railroad* v. *Ayer*, 253 Mass. 122, 129; that "It may not be always easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both," *Bessette* v. *W. B. Conkey Co.* 194 U. S. 324, 329, quoted in *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418, 441, and in *Root* v. *MacDonald*, 260 Mass. 344, 359; see also *Hurley* v. *Commonwealth*, 188 Mass. 443, 445, and *Root* v. *MacDonald*, 260 Mass. 344, 358, 363; and that "The use of the word 'criminal' in connection with contempts . . . is not strictly accurate, because numerous incidents of criminal trials are inapplicable to trials for contempt. . . . Nevertheless, it has come into common use." *Root* v. *MacDonald*, 260 Mass. 344, 357, see also page 365.

The contempts of which said Dolan and said Quinn were adjudged guilty, and for which they were sentenced to confinement in the common jail, consisted, in substance, of obstructing and interfering with the course of justice by corrupting and unlawfully influencing persons serving as jurors in the Superior Court at a time when it was possible that some or all of them would be drawn to sit in the trial of indictments in which said Dolan and said Quinn were charged with having committed crimes, so that a fair trial of the indictments at the time set therefor was made impossible.

Such contempts clearly are in the category of criminal contempts. Of somewhat similar contempts it was said in *Hurley* v. *Commonwealth*, 188 Mass. 443, 447: "Contempts of this kind are most dangerous assaults upon the integrity of our courts in the trial of cases. It is inconceivable that any court would treat such an offence as

anything less than a criminal contempt of the gravest character." And it was also said in that case that "it is universally recognized that an offence, committed directly against the authority and dignity of the court, as distinguished from mere disobedience of an order made for the benefit of a party, is therefore called a criminal contempt. The punishment of such an offence is solely for the vindication of public authority and the majesty of the law." Page 445. See also *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 372. The contempts here in question fall within this description.. They were not wrongs to any individual suitor or suitors. This is particularly clear since, unlike many instances of criminal contempts (see, for example, *Blankenburg* v. *Commonwealth*, 260 Mass. 369), the cases in connection with which the contempts occurred were criminal cases and consequently brought by the Commonwealth. Nor were they wrongs to any judge as a person. *Blankenburg* v. *Commonwealth*, 272 Mass. 25, 37. *United States* v. *Shipp*, 203 U. S. 563, 574. Each of them was a "public wrong," a wrong to "organized society." *Root* v. *MacDonald*, 260 Mass. 344, 358. *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 372, 373. And the proceedings were not remedial or coercive, but solely punitive. *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 372, 373. In many aspects they were subject to the law governing criminal cases. *Root* v. *MacDonald*, 260 Mass. 344. For example, a sentence to punishment for such a contempt is a "judgment in a criminal case" which may be re-examined upon a writ of error under G. L. (Ter. Ed.) c. 250, § 9. *Hurley* v. *Commonwealth*, 188 Mass. 443, 445. *Blankenburg* v. *Commonwealth*, 260 Mass. 369. In no respect are these contempts civil contempts.

It follows from what has been said that the contempts in question are, in substance and effect, "offences" against the Commonwealth. Indeed, this court, in language already quoted, has referred to such a contempt as an "offence." The controlling constitutional provision, moreover, does not use the word "offences" in a narrow sense, as is indicated by the fact that it was thought necessary to exclude

expressly from the pardoning power persons convicted by impeachment, a form of conviction which does not preclude a further conviction for crime upon indictment. Constitution, Part II, c. 1, § 2, art. 8. *Hiss* v. *Bartlett*, 3 Gray, 468, 473. Strong support for the conclusion that the contempts in question are "offences" within the pardoning power conferred by the Constitution, Part II, c. 2, § 1, art. 8, is found in the unanimous decision of the Supreme Court of the United States in *Ex parte Grossman*, 267 U. S. 87, where the opinion was written by Chief Justice Taft. Article 2, § 2, clause 1, of the Constitution of the United States provides that the President "shall have power to grant reprieves and pardons for offences against the United States, except in cases of impeachment." The court held that the pardoning power so conferred extended to criminal contempts and said that "Nothing in the ordinary meaning of the words 'offences against the United States' excludes criminal contempts" (page 115), though pointing out that "the term 'offences' is used in the Constitution in a more comprehensive sense than are the terms 'crimes' and 'criminal prosecutions'" (page 117). This decision is entitled to great respect, and the reasoning of the opinion is highly persuasive with reference to the meaning and effect of the pertinent provision of the State Constitution. There is no significant difference in the language of the two constitutional provisions by which pardoning power is conferred. And they have substantially the same historical background in the light of which the language of the provisions is to be construed. We think that, with respect to criminal contempts such as are here in question, the decision in the *Grossman* case should be followed in interpreting the pardon clause of the Constitution of the Commonwealth. See also cases collected and discussed in *Ex parte Grossman*, 267 U. S. 87, 119. A narrower interpretation of this clause is not to be made by reason of the express provision contained in art. 30 of the Declaration of Rights that "the executive [department] shall never exercise the legislative and judicial powers, or either of them." The pardon clause specifically confers the pardoning power upon the execu-

tive department and must be given its natural meaning. Whether there are criminal contempts of such kinds or committed in such circumstances that they so far tend to destroy the independence of the judiciary that the pardon clause is not to be construed as including them, we need not inquire. Compare *Ex parte Grossman*, 267 U. S. 87, 120, 121. We are of opinion that the criminal contempts here in question, though tending seriously to embarrass the courts, are not excluded from the pardon clause for this reason.

Finally, the criminal contempts here in question are not expressly excluded from the pardon clause by the provisions thereof. Obviously they are not excluded by the provision relating to impeachment. And pardons hereafter granted would not be granted "before conviction." There were here not only findings of guilt — comparable to verdicts in cases tried before juries — but also sentences to punishment which are judgments. *Hurley* v. *Commonwealth*, 188 Mass. 443, 445. In *Commonwealth* v. *Lockwood*, 109 Mass. 323, it was decided that a verdict of a jury, though no sentence thereon had been imposed and exceptions thereto were pending which might result in the verdict being set aside, amounted to a "conviction" within the meaning of the pardon clause. That decision is controlling here. The judgments against said Dolan and said Quinn, though writs of error are pending, stand unless and until they are reversed. They amount to convictions, and the pendency of writs of error to reverse them does not preclude the granting of pardons to the persons convicted.

This opinion is confined to criminal contempts such as are referred to in the order. Undoubtedly, purely civil contempts cannot be pardoned. See *Ex parte Grossman*, 267 U. S. 87, 121. We intimate no opinion with respect to contempts which partake of the nature both of civil contempts and of criminal contempts, or with respect to criminal contempts essentially different from those referred to in the order.

For the reasons stated we answer the first question "Yes" as applied to the specific matters referred to in the order, and the second question "Yes."

By reason of illness, Mr. Justice Cox has been prevented from participating in the consideration of these questions and answers. Mr. Justice Ronan was Assistant Attorney General before his appointment as a Justice of this court, and acted as counsel in connection with the writs of error referred to in the order. He therefore asks to be excused from answering the questions.

FRED T. FIELD.
CHARLES H. DONAHUE.
HENRY T. LUMMUS.
STANLEY E. QUA.
ARTHUR W. DOLAN.